[No. 16798-4-III.   Division Three.   June 24, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. IVAN EARL BARNES, *Appellant*.

---

BROWN, J., dissents by separate opinion.

*Donald G. Miller,* for appellant.

*Steven Tucker, Prosecuting Attorney,* and *Janet G. Gemberling, Deputy,* for respondent.

SWEENEY, J. — In this search and seizure case, a Spokane police officer stopped Ivan Barnes because he thought Mr. Barnes had an outstanding warrant. He was wrong. The question presented is whether Mr. Barnes' encounter with the police officer was consensual. We conclude it was not and reverse.

## FACTS

Spokane Police Officer Felix Moran spotted Ivan Barnes approaching the corner of First and Madelia on May 15, 1996. Mr. Barnes lived in the neighborhood.

Officer Moran noticed Mr. Barnes because within the two weeks previous he had seen an outstanding warrant on him for a minor infraction.

Officer Moran knew Mr. Barnes. He had arrested him 10 to 20 times before. But Mr. Barnes had no prior arrests or convictions for violence or weapons. And Officer Moran knew this. Mr. Barnes did have a history of drug-related misdemeanors, primarily possession of paraphernalia (his crack pipe) and a couple of thefts.

Officer Moran testified he would have approached and questioned Mr. Barnes, with or without a warrant. Officer Moran approached Mr. Barnes and told him that he had seen an outstanding warrant for him. Mr. Barnes told Officer Moran the warrant had been cleared. Officer Moran then asked if Mr. Barnes "would be willing to stick around while I check on it." Officer Moran specifically recalls using the words, "would you mind." Mr. Barnes stuck around.

The warrant had in fact been cleared.

Officer Moran's view of the contact was summed up in his testimony:

> Q. . . . And a field contact means when you just approach someone that—and see whether they will voluntarily talk to you?

A. Right. Right. Which is how this started.

Q. Okay. It started with a field contact?

A. Yeah. That is how it started out. And the investigation of the warrant, of course.

Officer Moran did not tell Mr. Barnes he was free to leave. He subjectively believed, however, that Mr. Barnes was free to walk away. Mr. Barnes did not believe he was free to leave. He testified that he asked to leave, and Officer Moran told him "No."

Mr. Barnes began to "fidget with himself." He put his hand in his right front coat pocket several times while they were waiting for the radio response to the warrant check. Officer Moran told him to stop. Mr. Barnes told Officer Moran he was concerned about coffee creamer that was leaking in his pocket. And Officer Moran observed a wet spot on Mr. Barnes' left front pocket. About 5 to 10 minutes into the encounter, a backup unit, automatically dispatched following a warrant check, arrived on the scene.

Officer Moran told Mr. Barnes that he was going to pat him down for weapons because of the hand-in-pocket behavior, and that his hands would be held behind his back during the patdown. Mr. Barnes asked if he was under arrest. The record does not show the answer, if any. A second officer held Mr. Barnes' hands behind his back.

Mr. Barnes physically resisted the search. He jammed his hands in his pockets and struggled. At this point, Officer Moran decided Mr. Barnes was not free to leave. More police arrived. Police overpowered Mr. Barnes and handcuffed him.

Mr. Barnes was arrested for obstructing.[1] The search incident to arrest turned up crack cocaine and a crack pipe. Police did not charge Mr. Barnes with obstructing. He was eventually charged with the drug offense. It was not until

---

[1]"A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1).

after the arrest that the police radio reported back on the warrant.

Mr. Barnes moved to suppress the drug evidence. The motion was denied. Mr. Barnes was convicted on stipulated facts on June 26, 1997.

## DISCUSSION

Warrantless seizures are per se unreasonable. A warrantless seizure may, however, be reasonable if it is supported by consent or exigent circumstances, or if the search is incident to a valid arrest or a *Terry* investigative stop. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Rife*, 133 Wn.2d 140, 150-51, 943 P.2d 266 (1997).

Following the suppression hearing, the trial court entered a finding of fact that Mr. Barnes' encounter with Officer Moran was consensual. The court also concluded that the stop and ensuing search constituted a lawful investigatory stop under *State v. Rife*, 81 Wn. App. 258, 913 P.2d 850 (1996),[2] and *State v. Perea*, 85 Wn. App. 339, 932 P.2d 1258 (1997). Both these decisions affirm the statutory authority of the police to extend the detention of a person stopped for a traffic infraction, or other minor offense, long enough to conduct a warrants check. In both cases, a warrant was outstanding.

Here, Mr. Barnes had not committed any offense or violated any law. He had no outstanding warrants. He had done nothing to warrant a stop. He therefore contends that the detention was not justifiable as an investigatory stop, which requires articulable objective reasons to suspect that Mr. Barnes was engaged in criminal activity. *State v. Armenta*, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997). He also denies he consented.

The State does not respond to the first contention and so

---

[2]*Rife* was reversed by 133 Wn.2d 140, 943 P.2d 266 (1997). In response to the reversal, the Legislature amended the statute. RCW 46.61.021(2) was amended by LAWS OF 1997, 1st Sp. Sess., ch. 1, § 1, effective September 17, 1997. The statute now provides that a person who is stopped for a traffic infraction may be detained for a reasonable period of time to check for outstanding warrants. Mr. Barnes was detained in May 1996.

does not defend the encounter as an investigatory stop. Instead, the State contends the stop was consensual. That is the only question before us.

■ *Standard of review:* Whether a stop is a permissive encounter or a seizure is a question of mixed law and fact. *Armenta*, 134 Wn.2d at 9; *State v. Thorn*, 129 Wn.2d 347, 351, 917 P.2d 108 (1996). The trial court assesses the credibility of witnesses, weighs the evidence, and resolves differing accounts of the circumstances surrounding the encounter. We therefore accord great deference to its findings. *State v. Hill*, 123 Wn.2d 641, 646-47, 870 P.2d 313 (1994). The ultimate determination of whether those facts constitute a seizure, however, is one of law. And our review is therefore de novo. *Armenta*, 134 Wn.2d at 9; *Thorn*, 129 Wn.2d at 351.

■ *Permissive encounter*: Our analysis is guided by a number of well-established rules. An encounter between a citizen and the police is consensual or permissive if a reasonable person under the totality of the circumstances would feel free to walk away. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *State v. Mennegar*, 114 Wn.2d 304, 310, 787 P.2d 1347 (1990).

When a citizen freely converses with a police officer, the encounter is permissive. It is not a seizure; and therefore the Fourth Amendment is not implicated. *Id.* If a person does freely consent to stop and talk, the officer's merely asking questions or requesting identification does not necessarily elevate a consensual encounter into a seizure. *Id.* Neither does directing the person to remove his hands from his pockets, by itself, convert the encounter into a seizure. *State v. Nettles*, 70 Wn. App. 706, 710 n.6, 855 P.2d 699 (1993) (citing *Duhart v. United States*, 589 A.2d 895, 898 (D.C. 1991)), *review denied*, 123 Wn.2d 1010 (1994). A citizen who does not comply, however, is seized when the officer grabs his or her hands. *Id.*

We look at all the objective circumstances surrounding

the encounter to determine what a reasonable person would believe. *State v. Ellwood*, 52 Wn. App. 70, 73, 757 P.2d 547 (1988). The question is whether a reasonable person would have felt free to decline the officer's request and terminate the encounter. *Armenta*, 134 Wn.2d at 10-11 (citing *Florida v. Bostick*, 501 U.S. 429, 439, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991)).

We consider whether the language used in initiating the contact is coercive or permissive. "Gentlemen, I'd like to speak with you, could you come to my car?" is permissive. *Nettles*, 70 Wn. App. at 710. "Can I talk to you guys for a minute?" is permissive. *State v. Richardson*, 64 Wn. App. 693, 695, 825 P.2d 754 (1992); *State v. Aranguren*, 42 Wn. App. 452, 455-56, 711 P.2d 1096 (1985). " 'Wait right here' " is coercive and constitutes a seizure. *Ellwood*, 52 Wn. App. at 73.

Here, contact was established when Officer Moran told Mr. Barnes he thought there was a warrant outstanding on him. Officer Moran then requested that Mr. Barnes wait while he checked the warrant out. A reasonable person would not have felt free to walk away at this point, regardless of whether the exact words were, *"please* wait right here," or *"why don't you* wait right here," or *"would you mind* waiting right here," instead of just plain "wait right here." The ensuing interaction was a detention, not a social encounter.

Once Officer Moran communicated his belief or suspicion that lawful grounds existed to detain Mr. Barnes, the encounter ceased to be consensual. *State v. Soto-Garcia*, 68 Wn. App. 20, 25, 841 P.2d 1271 (1992) (reasonable person would not feel free to leave after officer asked him if he had cocaine on his person).

Objective circumstances also include Mr. Barnes' past experiences with the Spokane Police Department in general and Officer Moran in particular. These facts are germane to Mr. Barnes' reasonable expectations and his reasonable evaluation of his options in the circumstances. Office Moran had arrested Mr. Barnes before. So their relationship

was hardly the kind that would generate the informal banter which characterizes most social encounters.

*Officer's subjective belief is immaterial*: Officer Moran's subjective belief that Mr. Barnes was free to walk away is immaterial on the issue of whether a reasonable person would feel free to leave, unless Officer Moran communicated that information to Mr. Barnes. *Richardson*, 64 Wn. App. at 697 n.1; *Ellwood*, 52 Wn. App. at 73. It is also irrelevant that Officer Moran subjectively intended to detain Mr. Barnes with or without his consent, again except to the extent this was communicated. *Mendenhall*, 446 U.S. at 554 n.6.

Officer Moran testified he really thought he had seen a warrant, but that he would have stopped Mr. Barnes anyway. He testified that he would have allowed Mr. Barnes to walk away at any time, even after Mr. Barnes was restrained. Only when he started to fight did Officer Moran subjectively decide he was detaining Mr. Barnes. Officer Moran never actually told Mr. Barnes he was free to leave.

Given the totality of these circumstances, it would have been unreasonable for Mr. Barnes to conclude he was free to leave. This was not therefore a consensual encounter. It was a seizure—a seizure without probable cause. *State v. White*, 97 Wn.2d 92, 640 P.2d 1061 (1982).

*Obstruction of police*: The next question is, given the unlawful nature of the seizure, was the arrest for obstruction lawful.

█ A citizen must comply with an officer discharging lawful official duties. RCW 9A.76.020. In *State v. Little*, relied on by the State, the defendants fled from officers conducting a lawful investigatory stop. *State v. Little*, 116 Wn.2d 488, 497-98, 806 P.2d 749 (1991). That is to say, the officers were discharging lawful official duties.

Mr. Barnes relies on *State v. Valentine* to justify his use of force. *State v. Valentine*, 132 Wn.2d 1, 935 P.2d 1294 (1997). *Valentine* reconsidered the question of the legitimacy of reasonable force to resist an unlawful arrest. The court rejected the doctrine as outmoded, and concluded

that, nowadays, people must submit and rely on legal recourse. *Id.* at 19.

A person may lawfully resist only if the police conduct is so outrageous as to "shock the universal sense of fairness." *Id.* at 22. A lesser degree of outrageousness may justify dismissing the prosecution. But this can be determined only by the trial court. *Id.* at 23-24.

Mr. Barnes was arrested for obstruction but was never charged with obstruction. Our evaluation of the police conduct, therefore, ends with whether Mr. Barnes was lawfully detained. He was not. And therefore the incriminating evidence found in the resulting search should have been suppressed. The determination of whether the arrest for obstructing was lawful depends on whether the police were carrying out lawful duties. *Id.* at 23. An unlawful detention is by definition not part of lawful police duties.

The court is reversed and the information is dismissed.

SCHULTHEIS, C.J., concurs.

BROWN, J. (dissenting) — Serving warrants is an official police duty. CrR 2.2(c), (d). If a warrant is reasonably believed to be outstanding, it is reasonable to investigate. Here, the officer stated he had knowledge of a recently issued arrest warrant for Mr. Barnes, but did not know if the warrant had been cleared. No dispute exists that a warrant had been issued within the previous two weeks or that after arrest it checked clear. However, Mr. Barnes was not *seized* to investigate for a suspected warrant.

The trial court found on disputed facts that the initial encounter was voluntary; thus it was not a seizure. This is a trial court function. The record contains facts supporting the trial court's decision. The officer asked Mr. Barnes if he "would be willing to stick around while I check on it" or "would you mind." Thus, our review is limited to deciding whether the law has been correctly applied to the facts as found by the trial court. *See State v. Thorn*, 129 Wn.2d 347, 350-51, 917 P.2d 108 (1996) (question of seizure is mixed question of law and fact).

The officer stated he became concerned for his safety during this voluntary encounter when Mr. Barnes refused to remove his hands from his pockets while fidgeting. These are specific and articulable facts similar to the situations found in *City of Seattle v. Hall*, 60 Wn. App. 645, 806 P.2d 1246 (1991); *State v. Nettles*, 70 Wn. App. 706, 708, 855 P.2d 699 (1993) (cited with approval in *Thorn*, 129 Wn.2d at 352), *review denied*, 123 Wn.2d 1010 (1994).

A protective search or frisk is a police function allowed under these circumstances if the initial encounter is (1) legitimate, (2) the officer has a legitimate safety concern based on specific and articulable facts that a weapon may be present, and (3) the frisk is limited to the protective purpose. *State v. Collins*, 121 Wn.2d 168, 173, 847 P.2d 919 (1993). First, the trial court determined the encounter was legitimate because it was voluntary. Second, Mr. Barnes admits he refused to take his hands out of his pockets, thus supporting the officer's stated specific and articulable facts. Third, the purpose of the limited protective search was to learn whether the pockets contained weapons.

Mr. Barnes was arrested based on probable cause that he obstructed an official police function. That the initial charge underlying the arrest was obstructing, assault or any other possible connected offense is not important. Neither is the failure to prosecute the arresting charge important. It matters not that the warrant was stale or current. These considerations are irrelevant under these facts so long as probable cause existed to arrest.

Mr. Barnes has not shown his consent to the initial voluntary encounter was revoked or vitiated by any prior illegality on the part of the police. To decide otherwise is to re-decide the facts and intrude into trial court functions that we may not do. Because a protective search is a recognized police function that protects police and others, I would hold the contraband was seized incident to a lawful search incident to a lawful arrest based upon probable cause.

Accordingly, I would affirm. Necessarily, I respectfully dissent.