[Nos. 45696-2-I; 46739-5-I. Division One. October 29, 2001.]

THE STATE OF WASHINGTON, *Appellant*, v. JAMES BRUCE RANKIN, *Respondent*.

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN D. STAAB, *Appellant*.

*James H. Krider, Prosecuting Attorney,* and *Charles F. Blackman, Deputy,* for appellant State.

*Eric J. Nielsen* (of *Nielsen, Broman & Associates, P.L.L.C.*), for appellant Staab.

*David L. Donnan* (of *Washington Appellate Project*), for respondent Rankin.

*Norm Maleng, Prosecuting Attorney*, and *Daniel J. Clark, Deputy*, for respondent State.

GROSSE, J. — Because these two cases involve an identical issue, we consolidate them for the purpose of issuing a single opinion.

An innocent passenger in a motor vehicle that is involved in a traffic stop enjoys undiminished privacy rights despite status as a passenger. Nevertheless, nothing prevents police officers from requesting identification of a passenger under the same circumstances that they can request identification or information from any person they encounter. While police officers may not demand or require identification of innocent citizens, a mere request is not impermissible and will not turn the encounter into a seizure. In this case, because the trial court found that the police officer had merely requested, not demanded or required, identification of Staab, we affirm the denial of Staab's motion to suppress. Because the trial court's seizure analysis in Rankin was in error, and because the trial court found that the police officer had merely requested identification of Rankin, we reverse the trial court's suppression of evidence.

## FACTS

Kevin D. Staab:

On the night of March 3, 1999, Officer Renninger of the Tukwila Police Department saw a vehicle without a rear license plate light. He activated his siren and emergency lights and stopped the vehicle at an intersection. The officer walked to the driver side window and asked the driver for

his identification. He then said to the passenger, Staab: "Can I see your driver's license or proof of identification?" Staab had committed no infraction and nothing about Staab made the officer concerned for his safety.

Staab searched his pockets to find his identification. He pulled out a cash card and a clear plastic bag that contained a white chalky substance, and then returned the items to his pocket. Based on his training and experience, the officer believed the substance in the bag to be cocaine. Staab was unable to produce identification, but verbally identified himself. The officer returned to his patrol car and ran a computer check on both Staab and the driver. Neither had any warrants.

The officer then returned, asked Staab to step from the vehicle, and searched his pockets. He found the bag containing the suspected cocaine, and advised Staab that he was under arrest for possession of cocaine. At the station, the officer read Staab his rights and then asked him if the substance was cocaine. Staab admitted that it was. Subsequent laboratory tests confirmed the presence of cocaine.

Staab moved to suppress the cocaine and his statements, arguing that the officer had no basis to ask Staab for his identification, and that the cocaine and Staab's statements were therefore the fruit of an unlawful seizure.[1] The trial court denied the motion finding that "the circumstances in this case do not rise to the level of coercive police action."[2] The trial court specifically found that Officer Renninger did not "demand" or "require" identification of Staab.[3] Staab was found guilty of possession of cocaine following a stipulated trial. He appeals, arguing that the trial court erred in denying his motion to suppress.

[1] Staab also argued below that he was not read his rights until after he had confessed to possession of cocaine. Staab does not argue the CrR 3.5 issue on appeal.

[2] Findings of Fact and Conclusions of Law on CrR 3.5 and 3.6 Motions at 3 (46739-5).

[3] Findings of Fact and Conclusions of Law on CrR 3.5 and 3.6 Motions at 3 (46739-5).

James B. Rankin:

On the night of September 17, 1999, Deputy Geoghagan of the Snohomish County Sheriff's Office saw a black Mustang automobile roll over a marked stop line. The officer activated his emergency equipment and pulled the vehicle over in a parking lot. He approached the passenger-side window and requested identification from both the driver and the passenger, James Rankin. The deputy wrote down the information contained on Rankin's identification card, handed the card back to Rankin, and returned to his patrol car with the driver's license, stating, "I'll be right back."

Deputy Geoghagan ran the information on Rankin and the driver through dispatch. This took approximately two to three minutes. While the driver had no warrants, Rankin had a warrant for violation of a no-contact order. The deputy called for backup, and two other officers responded to the scene.[4] Deputy Geoghagan returned to the automobile and arrested Rankin. Methamphetamine was found in Rankin's pocket in the search incident to arrest.

Rankin moved to suppress the methamphetamine, arguing that he had been unlawfully seized. At the suppression hearing, Deputy Geoghagan testified that he recognized Rankin as someone he had arrested one month before the stop in question. After being questioned by the court about whether he wished to testify, Rankin declined. The trial court found that a reasonable person would not have felt free to leave the scene of the stop, basing its conclusion in part on the fact that Rankin had been arrested recently by the same officer, and that Rankin as "a person of limited mental sophistication[,] would have felt under the authority of the officer."[5] The court thus suppressed the methamphetamine and dismissed the charges against Rankin. The State appeals.

---

[4] The record does not reveal how long it took for the other officers to arrive.

[5] Conclusion of Law 6 (45696-2).

## DISCUSSION

 In reviewing a suppression motion, the court independently evaluates the evidence to determine whether substantial evidence supports the findings, and whether the findings support the conclusions.[6] The determination of whether a seizure has occurred is a mixed question of law and fact. The factual findings of the trial court are given great deference. But the ultimate determination of whether those facts constitute a seizure is one of law and is reviewed de novo.[7] The burden is on the defendant to demonstrate that a seizure occurred.[8]

 An officer may not require a passenger in a vehicle stopped for an infraction to provide identification.[9] However, a request for identification without more does not constitute a seizure.[10] An officer is "permitted to engage persons in conversation and ask for identification even in the absence of an articulable suspicion of wrongdoing."[11]

In *State v. Mendez*, the Supreme Court clarified that a passenger in a traffic stop is independent of the driver, and has undiminished privacy rights.[12] "While the operator of a vehicle is seized when a police authority signals the operator to stop after a traffic infraction, the privacy rights of passengers in that stopped vehicle are not diminished by the stop."[13] As such, a passenger in a vehicle is in the same position as a pedestrian. As is the case with a pedestrian, a

[6] *State v. Dempsey*, 88 Wn. App. 918, 921, 947 P.2d 265 (1997).

[7] *State v. Thorn*, 129 Wn.2d 347, 351, 917 P.2d 108 (1996).

[8] *Thorn*, 129 Wn.2d at 354.

[9] *State v. Larson*, 93 Wn.2d 638, 611 P.2d 771 (1980). *See also State v. Cook*, 104 Wn. App. 186, 15 P.3d 677 (2001) (officers may not require people in the car other than the driver to give identification unless other circumstances give police officers independent cause to question the passengers).

[10] *See, e.g., State v. Hansen*, 99 Wn. App. 575, 994 P.2d 855, *review denied*, 141 Wn.2d 1022 (2000); *State v. Armenta*, 134 Wn.2d 1, 11, 948 P.2d 1280 (1997).

[11] *State v. Young*, 135 Wn.2d 498, 511, 957 P.2d 681 (1998).

[12] *State v. Mendez*, 137 Wn.2d 208, 970 P.2d 722 (1999).

[13] *Mendez*, 137 Wn.2d at 222.

mere request for identification from a passenger does not rise to the level of a seizure. *State v. Larson* does not hold to the contrary, but merely prohibits an officer from demanding identification.

An encounter between a police officer and a person, whether a pedestrian or a passenger in a vehicle, constitutes a seizure when, under the particular objective facts and circumstances surrounding the incident, a reasonable person would not have felt free to leave or otherwise terminate the encounter.[14] And consistent with *State v. Larson*, 93 Wn.2d 638, 611 P.2d 771 (1980), an officer may not, absent an independent basis for doing so, require a passenger to provide identification. In both Staab and Rankin's cases, the officer had no independent grounds for asking for identification. In neither instance did the officers articulate concerns for officer safety, and neither Staab nor Rankin had committed any traffic infraction. The inquiry, then, is whether the officers in each case merely requested identification, or whether they required it. The former is permissible, the latter is not.

The determination of whether an officer has required identification is a question of fact. The words used by the officer are relevant, but not dispositive, in determining whether the officer has required or merely requested identification. Other factors include but are not limited to the officer's tone of voice and manner, the officer's position at the vehicle, and whether the officer has made a show of force. The fact that a uniformed police officer has effected a traffic stop on the vehicle may be taken into consideration, but this factor alone does not transform a permissible request for identification into an impermissible demand.

In Staab's case, the record does not demonstrate that the officer's request rose to the level of a demand or requirement that Staab produce identification. Indeed, Staab did not in fact produce identification, and told the officer that he had no identification even as he reached into his pockets. Staab argues that because the officer asked for his identi-

---

[14] *Armenta*, 134 Wn.2d at 10-11.

fication in the same manner as he asked for the driver's license, the officer required Staab to provide identification. We agree that whether the officer asked for identification from a passenger in the same manner as from the driver may be one factor to look at in determining whether the officer has requested or required identification. But we defer to the trial court's finding on factual matters, and we will not disturb a trial court's factual findings when they are supported by substantial evidence.[15] The trial court found that neither the officer's words nor his conduct amounted to a demand or requirement to produce identification.[16] This finding was amply supported by the evidence, and we find no error in the trial court's denial of Staab's suppression motion.

In Rankin's case, the trial court did not focus on whether the officer required Rankin to provide identification. Instead, the court found that the issue was whether the contact between Rankin was consensual and permissive. The trial court found that the fact that Rankin was the passenger in a vehicle distinguished the situation from one where an officer approaches someone on the street, and concluded that Rankin was seized because he would not have felt free to leave. The State argues, and we agree, the trial court misapplied the law in its analysis.

The trial court found that Rankin's "limited mental sophistication" contributed to his belief that he was not free to leave. But a defendant's subjective mental state is not relevant in determining whether a seizure occurred. The Washington Supreme Court has rejected the mixed objective/subjective test for seizure articulated in *California v. Hodari D.*,[17] adhering instead to a purely objective test.[18]

---

[15] *See, e.g., State v. Halstien*, 122 Wn.2d 109, 128-29, 857 P.2d 270 (1993).

[16] Findings of Fact and Conclusions of Law on CrR 3.5 and 3.6 Motions at 3 (46739-5). Although these findings were listed as conclusions of law, it is clear that the trial court was actually making a factual determination, and we treat them as such.

[17] *California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991).

[18] *State v. Young*, 135 Wn.2d at 510.

Thus, the trial court erred in relying on Rankin's subjective mental state in making its findings.[19]

The trial court also found that the fact that Rankin had been arrested by Deputy Geoghagan one month prior to the stop would have led him to believe he was not free to leave. Division Three of the Court of Appeals has held that a defendant's past contacts with an officer are germane to his "reasonable expectations and his reasonable evaluation of his options in the circumstances."[20] Neither the Supreme Court nor this court has held that the life experiences of an individual are relevant to the "reasonable person" standard. In any event, in this case, Rankin did not testify. Therefore, the record is silent as to whether Rankin even recognized Deputy Geoghagan. Thus, the trial court's finding that Rankin's recent arrest contributed to his reasonable belief that he was not free to leave was in error, even if we were to adopt Division Three's rather expansive view of what constitutes an "objective" factor.

The trial court found that the fact that other officers arrived on the scene "would have been noticed" by Rankin, contributing to a belief that he was not free to leave. The driver of the vehicle testified that she believed that another patrol car arrived as the officer was walking back to his car. However, Deputy Geoghagan testified that the other officers did not arrive until after he called for backup, after discovering the existence of the warrant. The court's findings of fact do not specify when it found that the other officers arrived, but merely indicate that "Officer Geoghagan went back to his patrol car to conduct a warrant check and at least two other officers arrived." As discussed above, once the warrant was discovered the officers had probable cause to arrest Rankin, and any seizure was therefore lawful. If the other officers arrived after the discovery of the

---

[19] Additionally, it is somewhat unclear how the trial court could make a factual finding that Rankin was of limited mental sophistication, given that Rankin did not testify.

[20] *State v. Barnes*, 96 Wn. App. 217, 223, 978 P.2d 1131 (1999).

warrant, the presence of the additional officers is irrelevant. In any event, while the presence of additional officers may in some circumstances contribute to a reasonable belief that an individual is not free to leave, the record here is silent as to whether Rankin even observed the officers. The court's finding on this point was therefore in error.

Although no findings were made on this issue at the trial court, Rankin argues that he was seized because the officer stated "I'll be right back" after handing back his identification, and that these words indicated that he was not free to go. Commands on the part of an officer may effect a seizure.[21] But statements and questions that are not coercive do not constitute seizures. "Gentlemen, I'd like to speak with you, could you come to my car?" is permissive.[22] "Can I talk to you guys for a minute?" is permissive.[23] The officer's statement here was clearly not equivalent to the officer commanding Rankin not to leave. Rankin was not seized by the officer's statement.

Rankin also argues that he was seized because he was physically prevented from leaving the scene. But increased difficulty in leaving is not dispositive as to whether a seizure has occurred.[24] Moreover, the focus of the inquiry is not on whether the defendant's movements are confined due to circumstances independent of police action, but on whether the police conduct was coercive.[25]

---

[21] *See, e.g., State v. Ellwood*, 52 Wn. App. 70, 73, 757 P.2d 547 (1988) ("wait right here" is a command constituting a seizure).

[22] *Barnes*, 96 Wn. App. at 223 (citing *State v. Nettles*, 70 Wn. App. 706, 710, 855 P.2d 699 (1993)).

[23] *Barnes*, 96 Wn. App. at 223 (citing *State v. Richardson*, 64 Wn. App. 693, 695, 825 P.2d 754 (1992); *State v. Aranguren*, 42 Wn. App. 452, 455-56, 711 P.2d 1096 (1985)).

[24] *See United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994) (stating that distinction between stopping pedestrian and person in car dissipates when car is parked in public place).

[25] *See, e.g., Florida v. Bostick*, 501 U.S. 429, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991) (holding that "free to leave test" does not apply where party's freedom of movement is restricted by factor independent of police conduct, such as being on

> [T]he question is not merely whether [the defendant] felt free to leave, but whether he felt free to terminate the encounter, refuse to answer the officer's question, or otherwise go about his business. Consequently, whether it was more difficult for the defendant to actually leave the scene of the police contact because he was in a parked car is not a significant factor here.[26]

Moreover, the trial court did not find as a factual matter that Rankin was physically prevented from leaving the scene. This argument is without merit.

▇ Having found that the trial court's analysis was in error, and having rejected Rankin's other arguments, we now turn our attention to the pertinent issue: namely, whether the officer merely requested that Rankin provide identification, or whether he required Rankin to provide identification. The trial court did not find as a matter of fact that the officer demanded or required identification of Rankin. To the contrary, the court specifically found that the officer "requested" identification from Rankin.[27] Rankin has not cross-appealed, and has not assigned error to the trial court's findings of fact. As such, the trial court's finding that the officer merely requested identification of Rankin is a verity on appeal.[28] Because the officer did not impermissibly require Rankin to provide identification, the trial court's suppression of evidence is reversed.

In light of our resolution of this matter, we need not address the State's argument in the alternative that any seizure of Rankin had terminated, and that the evidence found was therefore not tainted by the alleged seizure.

We affirm the trial court's denial of Staab's suppression

---

a bus). *See also Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984) (holding that no seizure took place where Immigration and Naturalization Service agents interrogated suspected aliens at their workplace despite the fact that the workers may not have felt free to leave because they were at work).

[26] *Thorn*, 129 Wn.2d at 353.

[27] Finding of Fact 3 (45696-2).

[28] *State v. Ross*, 141 Wn.2d 304, 309, 4 P.3d 130 (2000).

motion. We reverse the suppression of evidence in Rankin's case, and remand for trial.

WEBSTER and BAKER, JJ., concur.