IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2016 JUN -6 AM 9:14 FILED COURT OF APPEALS DIV I STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75030-5-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| ASKIA ROMMUL WILLIAMS, | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: June 6, 2016 |
| | ) | |

BECKER, J. — Appellant was carrying a gun and talking to himself on a street near a community recreation center. When an officer stopped him and asked for his name, appellant spontaneously volunteered the information that he was a convicted felon. This led to his conviction for unlawful possession of a firearm. Appellant contends the initial stop was an unlawful seizure justifying suppression of the officer's discovery of his felony record. Because appellant freely consented to stop and talk with the officer, the initial stop was not a seizure. The trial court properly denied the motion to suppress.

On an October afternoon in 2015, the Pierce County Sheriff's Department received a call reporting that a man with a gun on his hip was walking around and talking to himself across the street from a community recreation center. Deputy Kohl Stewart responded, aware of the possibility that the man might have

mental problems. Stewart arrived at the scene and saw the man, who was later identified as appellant Askia Williams. Stewart made a u-turn, drove his patrol car onto a nearby sidewalk, parked it, and approached Williams on foot. Williams put his hands on his head without being asked to do so.

Stewart testified that he did not draw his own gun or issue commands to Williams. "I let him know Washington State is an open carry state, so I had no problem with him having a gun on his hip." Stewart told Williams he could put his hands down to his side. He said Williams looked around and made a remark that a woman passerby was his ex-wife who was in the Federal Bureau of Investigation. Stewart asked Williams for his name. Williams stated his name and spontaneously disclosed that he was a convicted felon and that his gun was a black powder revolver.

Stewart ran a record check and confirmed that Williams was a convicted felon with a conviction for unlawfully possessing a firearm. He told Williams to place his hands behind his back. Williams was compliant. Stewart handcuffed Williams and took the handgun from him. Stewart again consulted records to confirm the felony record. He arrested Williams for unlawful possession of a firearm.

The State charged Williams with the crime of unlawful possession of a firearm in the second degree. Williams made motions under CrR 3.5 and CrR3.6 to suppress certain statements he made during his interaction with Stewart. Stewart and Williams testified at an evidentiary hearing. The trial court denied both motions. A jury convicted Williams as charged. This appeal followed.

Williams contends he was illegally seized by the time Stewart asked him for his name and that as a result, his statement identifying himself as a convicted felon, and all other incriminating evidence discovered thereafter, should have been suppressed.

Whether police have seized a person is a mixed question of law and fact. The resolution by a trial court of differing accounts of the circumstances surrounding the encounter are factual findings entitled to great deference, but the ultimate determination of whether those facts constitute a seizure is one of law and is reviewed de novo. State v. Harrington, 167 Wn.2d 656, 662, 222 P.3d 92 (2009). If police unconstitutionally seize an individual prior to arrest, the exclusionary rule calls for suppression of evidence obtained via the government's illegality. Harrington, 167 Wn.2d at 664.

The trial court is required to enter written findings and conclusions after conducting an evidentiary hearing on a CrR 3.6 motion to suppress. CrR 3.6(b). In this case, the court first made a written ruling denying Williams' motion to suppress under CrR 3.5, finding that at the time Williams supplied his name and date of birth and the fact that he was a convicted felon, he was not under arrest and the statements were spontaneously made. Shortly thereafter, Williams moved to suppress under CrR3.6. He briefly argued that another ground for suppressing the challenged statements was that he was unlawfully detained. The trial court denied this motion as well, stating that it would stand by the CrR 3.5 ruling. Because there is no substantive dispute about the facts of the encounter, the lack of findings specifically designated as CrR 3.6 findings does

not hinder appellate review and Williams does not raise lack of findings as an issue.

Not every encounter between a law enforcement officer and a citizen is a seizure. United States v. Mendenhall, 446 U.S. 544, 551, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). When a citizen freely converses with a police officer, the encounter is permissive. The officer's merely asking questions or requesting identification does not necessarily elevate a consensual encounter into a seizure. State v. Barnes, 96 Wn. App. 217, 222, 978 P.2d 1131 (1999). An encounter will not lose its consensual nature unless the police convey that compliance with their requests is required. Florida v. Bostick, 501 U.S. 429, 435, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991).

An encounter that begins as a consensual social contact may escalate into a seizure. That is what happened in Harrington, 167 Wn.2d 656, and that is what Williams claims happened here. In Harrington, an officer noticed Dustin Harrington walking on a sidewalk late at night. The officer drove past, made a u-turn, parked his patrol car, and approached Harrington, who was then walking towards the officer. The officer did not activate his emergency lights or siren, his patrol car was not in sight, and the officer did not in any way block Harrington's freedom of movement. They began a consensual conversation. Up to this point, the encounter was not a seizure, even though the officer did increase the level of intrusion by asking Harrington, who seemed nervous, to keep his hands out of his pockets. Harrington, 167 Wn.2d at 660, 655.

4

The encounter was escalated to a seizure by the next two things that happened. Another officer, who happened to be driving by, made a u-turn, stopped, parked his car in the northbound traffic lane, and stood about eight feet away from Harrington. Meanwhile, the first officer asked Harrington for permission to pat him down. The pat down led to discovery of a drug pipe and to drug charges against Harrington, who moved to suppress the evidence on the basis of illegal seizure. The Supreme Court held the motion to suppress should have been granted. The pat-down request, combined with the show of force created by the arrival of the second officer, was a seizure undertaken without specific and articulable facts that would create an objectively reasonable belief that Harrington was armed and presently dangerous. Harrington, 167 Wn.2d at 669.

This case is not like Harrington. Although Williams testified that he was surrounded by four or five officers at the beginning of the encounter, the trial court did not find that testimony credible. Stewart is the only officer whose presence is disclosed by the record and the trial court's findings. And by the time Stewart put his hands on Williams, Williams had already spontaneously revealed his prior conviction, which supplied a legal basis for the seizure.

Harrington explains that police actions likely resulting in seizure include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person by the officer, or the use of language or tone of voice indicating that the compliance with the officer's request might be compelled. None of those police actions were present here. Stewart

5

did not use flashing lights or a siren, he did not display his weapon, he acknowledged to Williams that carrying a weapon was not illegal, he gave no commands, and he did not touch Williams or box him in so that he could not move away. It was Williams' burden to prove that a seizure occurred in violation of constitutional protections against illegal search and seizure. Harrington, 167 Wn.2d at 664. Williams has not met that burden.

Williams also argues that Stewart acted illegally while he investigated the firearm violation. After placing Williams in handcuffs, Stewart detained Williams while he once again consulted records to confirm the prior felony. Nothing in the record suggests that any part of the detention was unreasonable in length. While waiting for the results of the records check, Stewart secured the revolver. Williams said he had a receipt for it in his pocket. With Williams' consent, Stewart went through his pockets and found a receipt from the pawn shop where Williams had recently purchased the gun.

Williams contends that even if the seizure could be justified as an investigative detention, the receipt should have been suppressed because the search of his pockets exceeded the scope of a frisk for officer safety. This argument fails. The search of the pockets was done with Williams' consent. Voluntary consent is a valid exception to the rule that ordinarily prohibits warrantless searches. State v. Reichenbach, 153 Wn.2d 126, 131-32, 101 P.3d 80 (2004).

We conclude the trial court did not err by denying the motion to suppress.

Williams also alleges prosecutorial misconduct in argument. The crime of second degree unlawful possession of a firearm, RCW 9.41.040, includes a judicially-imposed knowledge element. State v. Anderson, 141 Wn.2d 357, 363-64, 5 P.3d 1247 (2000) (jury instruction should have included knowledge element when defendant claimed he did not know the handgun was in the car). Here, the to-convict instruction properly informed the jury that the State had the burden of proving that Williams "knowingly had a firearm in his possession or control." The jury was instructed that a "firearm" is a "weapon or device from which a projectile may be fired by an explosive such as gunpowder."

Williams' trial theory was that he did not know the object he was carrying on the day in question was a firearm. He testified that he believed that the item he purchased at the pawn shop was a nonfunctional replica of an antique revolver from the Civil War era, loaded with synthetic materials that simulated ammunition. The State contradicted his testimony with evidence that the gun was loaded and did properly fire when tested at a range. On appeal, Williams contends the prosecutor's rebuttal argument implied there was no mens rea element to the crime.

"A prosecuting attorney commits misconduct by misstating the law." State v. Allen, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). If a prosecutor makes an improper argument and the defendant timely objects, this court reviews to determine whether the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. Allen, 182 Wn.2d at 375.

The prosecutor's initial closing argument directed the jury to the elements of the crime as set forth in the to-convict instruction. The State discussed the evidence and emphasized that the dispute involved the knowledge element. "Did the defendant know it was a firearm?" In his closing, Williams argued that the evidence was insufficient to prove he knew the weapon he was carrying was capable of being fired. He claimed that the salesperson's act of selling the pistol without running a background check misled him into believing it was an item felons could possess. He pointed out the lack of evidence that the gun had been fired during the two weeks before Williams was arrested.

The prosecutor began rebuttal by characterizing the defense argument as a collection of red herrings.

> What does a background check have anything to do with whether defendant knowingly had a firearm or not? Who cares. Defendant could have purchased a firearm illegally.

Williams objected, "That's not in evidence." The court overruled the objection.

The prosecutor continued:

> What is before you is that the defendant bought a gun, a firearm. Antique, so what. Antique firearms, as I'm sure you're aware using your own common sense and life experiences know that they still go bang and they shoot projectiles.
> Replica of a Civil War piece. So what. It could be a black powder muzzle loader that still went bang and shot a projectile, and it would still be a firearm.
> October 11 through the 25th did the gun fire? Who cares. What's before you is not whether the firearm that the defendant had that he used it and fired it. What's before you is that the defendant had a firearm. Period.

8

The defendant objected that the prosecutor had misstated the law. Before the trial court ruled on the objection, the prosecutor said, "Your Honor, I'll rephrase." The prosecutor continued by referring again to the elements instruction. He argued there could be no reasonable doubt that Williams knew he had an operable firearm when the evidence showed he had loaded it with four rounds.

The statements to which Williams objected did not misstate the mens rea requirement of the crime. There is nothing in the prosecutor's argument that would mislead the jury into thinking the State did not have to prove knowledge. As the arguments on both sides recognized, the central issue in dispute was whether Williams knew the revolver was a functioning weapon, as opposed to a nonfunctioning replica of an antique firearm. Williams has not demonstrated prosecutorial misconduct.

In a statement of additional grounds, Williams contends that the State tampered with the gun and ammunition evidence, that continuances violated his right to a speedy trial, and that the court improperly denied his request for substitute counsel. We do not address these issues, either because the statement does not adequately inform us as to the nature and occurrence of the alleged errors or because they involve facts or evidence not in the record. RAP 10.10; see State v. Calvin, 176 Wn. App. 1, 26, 302 P.3d 509, 316 P.3d 496 (2013), review granted in part on other grounds and remanded, 183 Wn.2d 1013, 353 P.3d 640 (2015).

Affirmed.

WE CONCUR:

Becker, J.

Schindler, J

Leach, J.