# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49032-3-II |
| Respondent, | |
| v. | |
| NICHOLAS EDWARD NOVION, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Nicholas Edward Novion appeals his conviction for two counts of possession of a controlled substance, one for heroin and one for methamphetamine. Novion contends the trial court erred by denying his CrR 3.6 motion to suppress evidence seized near the location where police stopped him. We affirm Novion's convictions.

### FACTS[1]

Centralia Police Officer Mary Angelique Humphrey responded to a reporting party's report of a suspicious person, wearing a green sweatshirt and carrying a black backpack, walking door to door in a neighborhood and then back to a green Volvo. The reporting party believed that the person was engaging in illegal drug activity. Humphrey knew that a known drug house existed in the area. Humphrey also had previous contact with the reporting party and knew the reporting party was credible.

---

[1] The following facts are taken from the trial court's mostly unchallenged CrR 3.6 findings of fact, which are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

Humphrey spoke with the reporting party prior to her arrival to verify that the green Volvo was still there. Upon arrival, Humphrey contacted two individuals sitting inside the green Volvo. Humphrey noticed that the driver appeared nervous.

While speaking with the driver, Humphrey heard a house door close behind her. The officer turned around and noticed Novion, wearing a green sweatshirt and a black backpack, exit the house. The officer turned back to the driver and determined the driver was Novion's mother. The reporting party, who was standing on his porch, then yelled to Humphrey, "There he is" and pointed down the street. Clerk's Papers (CP) at 20.

Humphrey turned around and observed Novion down the street.[2] Humphrey got in her marked patrol vehicle and began to search the area for Novion. During this time Humphrey did not have her overhead lights or her siren on. Humphrey located Novion down the street, coming from the side of a house and walking towards the street, in a direction away from the officer.

Humphrey parked her patrol vehicle on the street at an angle and activated only the vehicle's rear light bar, which directed traffic around her vehicle. Her overhead lights and siren remained off.

Humphrey exited her patrol vehicle and asked Novion to come to her location. At this same time, the homeowner exited his home and asked Novion what he was doing next to the house. Humphrey again asked Novion to come to her location. He complied. Humphrey then handcuffed Novion and waited for back up to arrive.

---

[2] The trial court found that the officer "observed [Novion] running away from the residence" and that Humphrey got in her patrol car after "seeing [Novion] running away." CP at 20-21 (Findings of Fact 1.4 and 1.5). Novion contends substantial evidence does not support these findings. The State agrees. We accept the State's concession and do not include these findings regarding Humphrey seeing Novion running away in our analysis.

2

Once backup arrived, Humphrey went to the side of the house where Novion had been. She located a pile of items next to a garden reel. In the pile were two prescription bottles with Novion's name on them, two bindles of methamphetamine, and a bindle that contained a black tar substance that turned out to be heroin.[3]

After the State charged Novion with two counts of possession, he filed a motion to suppress all evidence seized.

During the suppression hearing, Novion admitted he left the items next to the garden reel to return and retrieve them later. He also admitted the items were his and that among the items were heroin and methamphetamine. He also acknowledged that Humphrey did not have her overhead lights or siren on. Novion testified that "he felt seized because he knew Officer Humphrey was looking for him and she was driving around in the area." CP at 22.

The trial court denied Novion's motion to suppress, concluding the stop by Humphrey constituted a valid *Terry*[4] stop, and that even if it was not a valid *Terry* stop, Novion abandoned the items. The court also concluded no seizure occurred until Humphrey handcuffed Novion. Following a bench trial, the court convicted Novion as charged. He appeals.

ANALYSIS

Novion contends the trial court erred by denying his motion to suppress the methamphetamine and heroin located on the side of the home where Novion was arrested. Novion

---

[3] The trial court found that Humphrey found "a bindle that contained what appeared to be black tar heroin based on Officer Humphrey's training and experience." CP at 21 (Finding of Fact 17). Novion contends substantial evidence does not support this finding. He, however, does not provide argument in the argument section of his brief to explain his contention. The State agrees that substantial evidence does not exist. We accept the State's concession and do not include in our analysis this finding regarding whether the officer knew the substance was heroin when it was first discovered.

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

argues Humphrey illegally seized him when she directed him to come to her location because no reasonable or articulated suspicion existed that Novion was involved in criminal activity.

I.      STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence to determine whether substantial evidence supports the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Unchallenged findings of fact are verities on appeal. *O'Neill*, 148 Wn.2d at 571. We review a trial court's legal conclusions de novo. *State v. Roden*, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014). Because we accept the State's concession that three of the findings of fact are not supported by substantial evidence, we review whether the remaining unchallenged findings of fact support the trial court's legal conclusions.

II.     LEGAL PRINCIPLES

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit a warrantless search and seizure unless the State demonstrates that one of the narrow exceptions to the warrant requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). "These exceptions include exigent circumstances, consent, searches incident to a valid arrest, inventory searches, the plain view doctrine, and *Terry* investigative stops." *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 310, 178 P.3d 995 (2008) (footnote omitted). A *Terry* stop requires a well-founded suspicion that the defendant is engaged in criminal conduct. *State v. Doughty*, 170 Wn.2d 57, 62, 239 P.3d 573 (2010). The "police officer must be able to point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *State v. Williams*, 102 Wn.2d 733, 739, 689 P.2d 1065 (1984) (quoting *Terry*, 392 U.S. at 21). If the stop goes beyond

investigatory purposes, it becomes an arrest and requires a valid arrest warrant or probable cause. *State v. Flores*, 186 Wn.2d 506, 520-21, 379 P.3d 104 (2016).

The State bears the burden of showing that the search and seizure was supported by a warrant or an exception to the warrant requirement. *State v. Hendrickson*, 129 Wn.2d 61, 71, 917 P.2d 563 (1996). The exclusionary rule requires suppression of all evidence obtained pursuant to a person's unlawful seizure. *State v. Winterstein*, 167 Wn.2d 620, 632, 220 P.3d 1226 (2009).

"'Not every encounter between an officer and an individual amounts to a seizure.'" *State v. Armenta*, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997) (quoting *State v. Aranguren*, 42 Wn. App. 452, 455, 711 P.2d 1096 (1985)). A seizure occurs if, "'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *State v. Mecham*, 186 Wn.2d 128, 137, 380 P.3d 414 (2016) (quoting *State v. Young*, 135 Wn.2d 498, 510, 957 P.2d 681 (1998)). An officer who merely asks questions does not necessarily elevate a consensual encounter into a seizure. *State v. Barnes*, 96 Wn. App. 217, 222, 978 P.2d 1131 (1999).

III. CONCLUSIONS OF LAW SUPPORTED BY FINDINGS

Here, the trial court concluded the encounter between Humphrey and Novion was a valid *Terry* stop. Humphrey responded to a call from a reporting party reporting suspicious behavior in an area known for drug activity. Humphrey knew the reporting party and knew he had provided credible information in the past. Humphrey also knew there was a known drug house in the area. When the officer arrived, she saw a vehicle matching the description of the reported suspicious vehicle. Novion's mother sat in the driver's seat. Soon after, Novion exited a home near where the car was parked. Humphrey noticed he was wearing the green jacket and black backpack described by the reporting party. Instead of approaching the vehicle with his mother inside,

5

Novion went down the street.  Humphrey drove down the street in her patrol car and then observed Novion coming around the side of a residence.  The owner inquired why Novion was on his property, but Novion just continued walking away.

Taking the above specific and articulable facts together with rational inferences from those facts, including the fact Humphrey observed Novion committing a criminal trespass, Humphrey had a well-founded suspicion to stop Novion.  Past reports of criminal activity in an area, coupled with current suspicious behavior, support an investigatory stop.  *State v. Bray*, 143 Wn. App. 148, 153-54, 177 P.3d 154 (2008).  At the time Humphrey stopped Novion she observed him coming around the side of a home, which led the officer to the side of the home where she located contraband.  Because the subsequent seizure of the contraband did not result from an unconstitutional seizure, the exclusionary rule does not apply.  *Winterstein*, 167 Wn.2d at 632.

We hold that the trial court's conclusions that the initial stop was lawful and that the exclusionary rule does not apply were supported by the findings of fact.

We also hold the findings support the trial court's conclusion that Novion abandoned the contraband.  "Under the common law, a person loses normal privacy interests in property upon abandonment."  *State v. Samalia*, 186 Wn.2d 262, 273, 375 P.3d 1082 (2016).  "[L]aw enforcement officers may retrieve and search voluntarily abandoned property without implicating an individual's rights under the Fourth Amendment or under article I, section 7 of our state constitution."  *State v. Reynolds*, 144 Wn.2d 282, 287, 27 P.3d 200 (2001).  Since Novion walked to the side of a stranger's home, left several items next to a garden reel, and then walked away from the items, he abandoned the items.  Humphrey could lawfully retrieve and search the items.  The trial court properly concluded likewise.  Consequently, the trial court did not err in denying Novion's motion to suppress.

6

49032-3-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Bjorgen, C.J.

_____
Sutton, J.

7