[No. 23736–5–I. Division One. February 11, 1991.]

THE CITY OF SEATTLE, *Respondent*, v. JOHN HALL, *Petitioner.*

*Elaine Winters, Fran–Michelle Reichert,* and *Robert C. Boruchowitz* of *Seattle–King County Public Defender Association,* for petitioner.

*Mark H. Sidran, City Attorney,* and *Jeanne S. Innes, Assistant,* for respondent.

COLEMAN, J.—John Hall appeals from the Superior Court's decision affirming the Municipal Court's denial of his motion to suppress evidence of weapons found in his pockets. Hall also asserts that the citation issued against him was constitutionally defective. We affirm.

On December 5, 1987, Officer Leufroy and his partner were patrolling the Rainier Vista housing area which was known to them as an area of high drug trafficking. The

officers spotted a "huddle" of four men, one of whom Officer Leufroy recognized as someone he had previously arrested for burglary and auto theft. Although the men disbanded when one of them noticed the marked police car, the officers left their car and talked to one of the men still nearby. By then Hall was some distance away, but he turned around and walked toward the officers as they spoke with the other man.

As Hall approached, Officer Leufroy initiated a conversation with him, stating that the area was known for its drug activity. Hall stopped walking and the officer asked him to explain what had been going on in the huddle and why he returned. According to Officer Leufroy, Hall became "sort of hostile," "antsy," and "nervous" and kept his hands in his pockets.[1] These behaviors caused Officer Leufroy concern for his safety, so he frisked Hall for possible weapons. An open blade steak knife was found in the inside pocket of Hall's jean jacket and a razor blade was located in his pants pocket. Hall was arrested and charged by a citation which stated that he had violated Seattle Municipal Code (SMC) 12A.14.080 and described the violation as "Carrying Concealed Weapons (open fixed knife and razor blade)".

Judge Madsen of the Seattle Municipal Court denied Hall's motion to suppress the weapons as evidence and concluded that no *Terry* stop had occurred before the frisk because the defendant voluntarily approached and talked with Officer Leufroy. The judge also found that the officer had "legitimate concerns" that Hall might have had a weapon and that the circumstances justified a patdown. At the submittal hearing, Hall waived his right to trial, but did not waive his objection to the denial of his motion to suppress. Hall was found guilty as charged.

Hall appealed to the King County Superior Court, and the Municipal Court's ruling was affirmed. Specifically, the Superior Court judge held that Hall's contact with the

---

[1] On the back of the citation, Officer Leufroy clarified what he meant by "antsy" by writing that Hall "bobbed around, talking defensively."

police officer was voluntary, that the officer had the limited right to conduct a patdown for weapons, and that the frisk actually conducted by the officer constituted a patdown resulting in a lawful search. This appeal followed.

We initially consider whether a misdemeanor citation is constitutionally sufficient when it sets forth the correct code section and identifies the offense by a descriptive title, but omits an element of the charged offense and omits facts which would identify that element. This issue was not addressed in either court below.

■ The sufficiency of a charging document may be challenged for the first time on appeal when the defendant asserts that the document failed to allege the essential elements of the charged offense. *State v. Leach,* 113 Wn.2d 679, 697, 782 P.2d 552 (1989). However, because it is first raised on appeal, the issue is subjected to a stricter standard of review than if it had been addressed originally in either court below. *See State v. Walsh,* 57 Wn. App. 488, 491, 789 P.2d 766 (1990), *aff'd sub nom. State v. Howe,* 116 Wn.2d 466 (1991); *State v. Smith,* 49 Wn. App. 596, 598, 744 P.2d 1096 (1987), *review denied,* 110 Wn.2d 1007 (1988). Hall claims that by failing to allege the statutory element of "knowingly" carrying a concealed weapon, the citation failed to state an offense—which consequently prevented jurisdiction from vesting in the trial court—and violated his due process right to notice.

■ A misdemeanor citation that contains the appropriate statutory reference and an adequate description of the offense charged is constitutionally sufficient. *State v. Grant,* 89 Wn.2d 678, 575 P.2d 210 (1978), as discussed in *Leach,* at 689. Such a citation apprises a defendant with reasonable certainty of the nature of the accusations and allows the defendant to prepare an adequate defense. *Grant,* at 686; *Leach,* at 689.

In addition, CrRLJ 2.1 requires a citation to include "the date, time, place, numerical code section, description of the offense charged, the date on which the citation was issued, and the name of the citing officer[.]" CrRLJ 2.1(b)(3)(iii).

As noted by *Leach,* "a citation will not be considered insufficient if it does not contain a definite statement of the essential facts constituting the offense charged" when no prejudice results to the substantial rights of the defendant. *Leach,* at 694, citing CrRLJ 2.4(b).

Within the past several years, a series of opinions has attempted to clarify the issue of the constitutional sufficiency of charging documents, but the resulting decisions have arrived at inconsistent conclusions. In an effort to resolve the conflict, *Auburn v. Brooke,* 60 Wn. App. 87, 803 P.2d 1325 (1991) undertook a thoughtful and thorough analysis of the various opinions and reached what we believe to be a well–reasoned and sound determination.

In *Brooke,* the defendant was charged by citation with trespass and disorderly conduct. The citation set forth the municipal code section and the descriptive title "Disorderly Conduct." On appeal, Brooke asserted that the citation violated the essential elements rule by omitting the statutory element of "willfully" and failing to specify the precise act that Brooke committed which resulted in disorderly conduct. *Brooke,* at 89. He claimed that the citation consequently failed to state an offense or vest jurisdiction in the lower court and violated his due process right to adequate notice of the crime charged. *Brooke,* at 89.

In addressing Brooke's first contention, the court considered the Elverston portion of *Leach* and the citation requirements of CrRLJ 2.1(b)(3). The court concluded that "[a] citation which complies with the CrRLJ implicitly incorporates the contents of the code section into the citation and satisfies the essential elements rule." *Brooke,* at 93. Thus, although the essential elements rule applies to a citation, less specificity is required in a citation to satisfy the rule than for the other types of charging documents, given the unique nature of citations and their very basic statutory requirements. *Brooke,* at 90. *See also* CrRLJ 2.1-(b)(3).

With regard to Brooke's due process assertion, the court noted that the right to due process is not violated by the

differences between the procedures and requirements of citations and complaints. *Brooke,* at 93. In contrast to a complaint or information, a citation is issued by an officer at the scene and defendants so charged "are aware of the particular incident for which they are charged, and presumably know the facts underlying the charge." *Brooke,* at 94. Because Brooke indicated in a written guilty plea that he had pushed a table over during the incident leading to the citation, the court found that Brooke was aware of the willful element of the charged conduct. *Brooke,* at 94.

The misdemeanor citation in the present case specifically charged Hall with violating SMC 12A.14.080, which reads in part:

It is unlawful for a person knowingly to:

. . . .

B. Carry concealed or unconcealed on his/her person any dangerous knife, or carry concealed on his/her person any deadly weapon other than a pistol[.]

The citation also described the offense as "carrying a concealed weapon"[2] and identified the two weapons as an open fixed knife and a razor blade. However, the citation did not specifically allege that Hall "knowingly" carried the concealed weapons.

We find that the citation was constitutionally sufficient. As noted above, a citation states an offense if it specifies the code section that the defendant allegedly violated and a descriptive title of the offense charged. *Brooke,* at 93; CrRLJ 2.1(b)(3). Both of these criteria were met in this case. Consequently, the municipal court had jurisdiction to hear the case against Hall. *See Brooke,* at 93 ("a citation passes constitutional muster if it satisfies CrRLJ 2.1-(b)(3)").

---

[2]Although the actual title of the code section is "Unlawful use of weapons", the officer's use of the phrase "Carrying Concealed Weapons" adequately describes the offense charged. *See Leach,* at 689 ("'an information need not state the statutory elements of an offense in the precise language of the statute, but may instead use words conveying the same meaning and import as the statutory language.'") (quoting *State v. Nieblas–Duarte,* 55 Wn. App. 376, 380, 777 P.2d 583, *review denied,* 113 Wn.2d 1030 (1989)).

Further, in light of the stricter standard of review applied to issues initially raised on appeal, we find Hall's due process argument unpersuasive. When he appeared before both lower courts, Hall was represented by counsel and the process of discovery had been available to him. In addition, the citation clearly identified the code section which he allegedly violated. We also note that it would be highly unusual for Hall not to have known that he was carrying a razor and a knife with a 3½-inch blade. Because of these factors and because Hall made no showing of prejudice, we conclude that the citation met the fundamental fairness requirement of due process. *See* CrRLJ 2.4(b).

We next consider whether a police officer may frisk a person for weapons if that person voluntarily approaches the officer and behaves in a manner that causes the officer to believe the person could be presently armed and dangerous.

Hall claims that *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), limits an officer's right to conduct a protective search to instances in which a person first has been lawfully detained for questioning and that if no such stop occurred, the police are precluded from frisking that person for weapons.

We disagree. When an individual voluntarily approaches an officer and behaves in a manner that causes the officer a legitimate concern for his or her safety, that officer is entitled to take immediate protective measures. *Terry* is relevant only in that it specifies the circumstances under which a frisk is permissible.

In this case, Hall made some statements that Officer Leufroy considered "defensive" and behaved in ways that the officer described as "antsy," "hostile," and "nervous." Hall also kept his hands hidden from view in his pockets while interacting with Leufroy. Because of these objective behaviors, Officer Leufroy suspected that Hall could be armed and dangerous and consequently decided to frisk him for weapons.

Hall asserts that because no true *Terry* stop had occurred before he was frisked, the officer had no right to frisk him whether or not there were reasonable grounds to believe that Hall was armed and dangerous. This assertion is incorrect. *Terry* was not intended to abolish an officer's right to self–protection when that officer is reasonably convinced that an individual is armed and dangerous prior to an investigative detention of that person.[3] Rather, *Terry* authorizes officers to take the necessary precautions to protect themselves and others from a potentially dangerous individual. Such authorization is particularly significant when a person voluntarily approaches an officer and displays behavior that arouses legitimate safety concerns. Thus, if specific, objective facts lead an officer to believe that a person poses a danger to the officer, *Terry* does not require the officer to delay frisking the person for weapons.

The third issue presented for our review is whether Officer Leufroy's testimony described sufficient facts to indicate the existence of a reasonable and articulable suspicion that Hall was armed and dangerous. In making such a determination,

> due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Terry,* at 27. The officer does not have to be absolutely certain that a person is armed before searching that person for weapons. *Terry,* at 27; *State v. Harper,* 33 Wn. App. 507, 511, 655 P.2d 1199 (1982). Instead, a protective frisk is justifiable if "reasonably prudent [persons] in the circumstances would be warranted in the belief that [their] safety or that of others was in danger." *Terry,* at 27. Further, a

---

[3]Significantly, Hall made the following statement in his brief while discussing the proper scope of the frisk: "If Officer Leufroy had had a reasonable and articulable suspicion that Mr. Hall was armed and dangerous, a brief patdown for the officer's protection would have been justified."

person's demeanor and his actions during police questioning may provide a sufficient basis for an officer to believe the person is armed and dangerous. *Harper,* at 511.

In *Harper,* the defendant had repeatedly thrust his hands into his coat pockets while an officer questioned him about his activities earlier that night. *Harper,* at 509. The officer's subsequent search was justified, even though the defendant had contraband rather than a weapon in his pocket. *Harper,* at 511.

According to Officer Leufroy's testimony during the suppression hearing, Hall became "hostile" and "antsy" when asked questions about his recent activities and responded "defensively" to the questions. Hall also kept his hands in his pockets during this interchange. Officer Leufroy's 14 years of police experience led him to believe that Hall was armed and dangerous and, upon hearing the officer's testimony, the Municipal Court held that the officer's conclusion was reasonable. Taken together, the facts support the court's finding.

Finally, we address whether the frisk conducted by Officer Leufroy exceeded the constitutional scope of a frisk.

Hall asserts that Officer Leufroy never described the precise steps he took to conduct the frisk and argues that the officer reached into Hall's pocket before performing a patdown of Hall's outer clothing as required by *Terry.*

Although Officer Leufroy did not describe the specific steps he took to carry out the frisk, there is nothing in the record to support Hall's assertion that a full search rather than a frisk took place. Officer Leufroy testified that he conducted a "frisk," and the two lower courts reasonably interpreted that term of art to refer to a patdown.

The decision of the Superior Court is affirmed.

FORREST, J., and RINGOLD, J. Pro Tem., concur.