[No. 24356-0-I.  Division One.  November 4, 1991.]

THE CITY OF SEATTLE, *Respondent*, v. LESLIE RIGGINS, *Petitioner.*

314

*Jay H. Krulewitch* of *Seattle-King County Public Defender Association*, for petitioner.

*Mark H. Sidran, Seattle City Attorney,* and *Margaret Boyle, Assistant,* for respondent.

SCHOLFIELD, J. — Leslie Riggins was granted discretionary review of a superior court decision affirming his conviction in Seattle Municipal Court for unlawful use of weapons.[1] We affirm.

---

[1] Seattle Municipal Code (SMC) 12A.14.080(B) makes it unlawful for a person to knowingly "[c]arry concealed or unconcealed on his/her person any dangerous knife, or carry concealed on his/her person any deadly weapon other than a pistol; . . .". The term "dangerous knife" is defined as "any fixed-blade knife and any other knife having a blade more than three and one-half inches (3½") in length." SMC 12A.14.010(D). The term "fixed-blade knife" is defined under SMC 12A.14.010(E):

"Fixed-blade knife" means any knife regardless of blade length, with a blade which is permanently open and does not fold, or retract or slide into the handle of the knife, and includes any dagger, sword, bayonet, bolo knife, hatchet, axe, straight-edged razor, or razor blade not in a package, dispenser or shaving appliance.

There are several exemptions to SMC 12A.14.080(B). The ordinance does not apply to licensed hunters and fishermen actively engaged in such pursuits, persons carrying knives unconcealed pursuant to a lawful occupation, and those carrying knives in a secure wrapper or toolbox.

## FACTS

At about 6 p.m. on April 27, 1988, Seattle Police Officer T.B. Elster was on patrol in the 1300 block of First Avenue in Seattle when he observed Riggins carrying a knife in a sheath on his belt. The knife was partially concealed under Riggins' jacket. Elster and two other officers made contact with Riggins and told him that it was illegal to have the knife. Elster then measured the knife and placed Riggins under arrest. In his police report, Elster described the knife as having a fixed blade and measuring 5¼ inches in length. Officer Elster stated that he had stopped Riggins because of the knife and that he had not seen Riggins remove the knife from the sheath prior to arresting him.

Riggins testified that at the time of his arrest, he had been waiting for a bus to take him to his home near 21st Avenue and Jefferson Street. He stated that he had been at his brother's house earlier that day, and that he had intended to go fishing with his brother in the Puyallup area; however, they did not go fishing, but ended up using the knife to assist in roofing his brother's house.

After being placed under arrest, Riggins was taken to the police station, issued a citation and released. In the "violation code" section of the citation, the officer wrote "12A.14.080(B)", and in the "description" section, he wrote "Unlawful use of weapons"; the citation also provided the date, time and place of the violation.

At a bench trial in Seattle Municipal Court on September 2, 1988, Riggins argued that SMC 12A.14.080(B) was unconstitutional as it restricted the right to bear arms guaranteed by article 1, section 24 of the Washington Constitution. Riggins also contended that the ordinance was overbroad, amounting to an unreasonable exercise of the state police power, and that it attempted to regulate an area already preempted by state legislation. The trial court upheld the constitutionality of the ordinance and found Riggins guilty.

Riggins appealed his conviction to the Superior Court for King County. Following a May 30, 1989, hearing, the court affirmed Riggins' conviction, making the following findings:

There were sufficient facts to sustain defendant's conviction; Defendant was not engaging in any exemption conduct which would have been a defense; [t]he City's ordinance is a reasonable restriction on the right of Defendant to bear arms; [t]he safety of Seattle's citizens outweighs defendant[']s right to bear arms; [t]he ordinance is a reasonable exercise of police power; [t]here is no constitutional infirmity with the ordinance; [o]rdinance is not overly broad.

On February 5, 1990, this court granted discretionary review.

### THE RIGHT TO BEAR ARMS UNDER ARTICLE 1, SECTION 24 NOT INFRINGED

Article 1, section 24 of the Washington Constitution gives individual citizens the right to bear arms:

The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men.

■ Notwithstanding the seemingly absolute language of this constitutional provision, the right to bear arms is subject to reasonable regulation by the State under its police power. *State v. Rupe*, 101 Wn.2d 664, 707 n.9, 683 P.2d 571 (1984); *State v. Krantz*, 24 Wn.2d 350, 353, 164 P.2d 453 (1945).

Riggins contends that SMC 12A.14.080(B) violates his right to bear arms because it is an absolute prohibition against the mere possession or carrying of fixed-blade knives. He also argues that because the ordinance applies to all citizens and has not been narrowly drawn to meet a pressing public concern, it is not a reasonable exercise of the state police powers. Riggins asserts that the ordinance is not reasonably necessary to protect public safety or the general welfare, is not substantially related to the purpose of safeguarding the public, and that the complete loss of the constitutional right cannot be justified when balanced

against a vague public benefit. Lastly, he argues that the ordinance is overbroad as it criminalizes a broad variety of constitutionally protected conduct.

■ In challenging the constitutionality of SMC 12A-.14.080(B), Riggins faces a heavy burden. A legislative enactment is presumed constitutional, and the party challenging it bears the burden of proving it unconstitutional beyond a reasonable doubt. *State v. Brayman*, 110 Wn.2d 183, 193, 751 P.2d 294 (1988). If a court can reasonably conceive of a state of facts which would justify the legislation, those facts will be presumed to exist and the statute will be presumed to have been passed with reference to those facts. *Brayman*, at 193. Where legislation tends to promote the health, safety, morals, or welfare of the public and bears a reasonable and substantial relationship to that purpose, *every presumption will be indulged in favor of constitutionality. State v. Melcher*, 33 Wn. App. 357, 359, 655 P.2d 1169 (1982).

In this appeal, Riggins alleges that SMC 12A.14.080(B) is an unconstitutional infringement on his right to bear arms because it constitutes an absolute prohibition on the carrying or possession of fixed-blade knives. It is clear from an examination of the exemptions from the ordinance, however, that a total ban on fixed-blade knives was neither intended nor accomplished. An individual falling within any one of the three fairly broad exemptions of SMC 12A.14.100 may legally possess, transport, and use a dangerous knife. It is for this reason that Riggins' reliance on *State v. Delgado*, 298 Or. 395, 692 P.2d 610, 47 A.L.R.4th 643 (1984) is misplaced. The court in *Delgado* held that a statute which absolutely prohibited the mere possession or carrying of a switchblade knife violated the defendant's right to bear arms under the state constitution. *Delgado*, at 397, 403-04. The *Delgado* court made clear, however, that it was constitutionally permissible to regulate the possession of certain arms:

> We stress again, as we have stressed before, that this decision does not mean individuals have an unfettered right to

possess or use constitutionally protected arms in any way they please. The legislature may, if it chooses to do so, regulate possession and use. This court recognizes the seriousness with which the legislature views the possession of certain weapons, especially switch-blades. The problem here is that ORS 166.510(1) absolutely proscribes the mere possession or carrying of such arms. This the constitution does not permit.

(Footnotes and citations omitted.) *Delgado*, at 403-04.

SMC 12A.14.080(B) does not amount to a total ban on the possession of knives falling within its regulatory ambit. Rather, the ordinance merely seeks to regulate the carrying of fixed-blade knives.

In support of his contention that SMC 12A.14.080(B) is an infringement on his constitutional right to bear arms, Riggins argues that the ordinance is an unreasonable exercise of the City's police powers. The judicial test for reasonableness requires that the regulation be reasonably necessary to protect the public safety, health, morals, and general welfare and be substantially related to the legitimate ends sought. *Second Amend. Found. v. Renton*, 35 Wn. App. 583, 586, 668 P.2d 596 (1983).

■ Riggins argues that the "blanket prohibition" of dangerous knives by the ordinance is not reasonably necessary to protect the public safety or general welfare. Riggins mischaracterizes the reach of the ordinance. It is not a "blanket prohibition" on dangerous knives, but rather, a regulation on the carrying of such knives. He contends that the public benefit from the ordinance is so vague that it cannot justify the loss of a constitutional right.

Laws restricting or prohibiting the carrying or possession of knives have been held valid in other jurisdictions. *See* Annot., *Validity of State Statute Proscribing Possession or Carrying of Knife*, 47 A.L.R.4th 651 (1986).

In *People v. Ortiz*, 125 Misc. 2d 318, 479 N.Y.S.2d 613 (Crim. Ct. 1984), the court upheld New York's "knife law" against constitutional challenges similar to those asserted here. A search of Ortiz incident to his arrest uncovered a folding knife with a 4-inch blade. The "knife law" under which he was charged read as follows in pertinent part: "It

shall be unlawful for any person to carry on his or her person or have in his or her possession, in any public place, street, or park any knife which has a blade length of four inches or more . . .". *Ortiz*, at 320 (quoting New York City Local Law 64 (1983)). The New York law listed a number of exceptions from the general prohibition. The court found that the "knife law" was a rational enactment based on a valid presumption. "The presumption implicit in the local law is that four-inch knives, when carried on the streets, are being carried for criminal purposes, or for other reasons that are hazardous to the health, welfare and safety of the public." *Ortiz*, at 324. The court believed that the presumption was rational and based on common sense:

> As the City Council found in its investigative phase, and as any sentient person knows, knives are implicated in many street crimes, and continue to be a prime cause of serious injury and death. . . .
> Of course, a perfect definition is an impossibility; what the City Council has attained is reasonable precision. If an occasional fisherman or hunter should fall victim to this local law, an affirmative defense is provided.
> If such a law were enacted in a region dotted with wild life reserves, or if this were a more innocent age, perhaps it would not be reasonable. However, as a considered response to a serious and persistent urban problem, the local law is valid and reasonably calculated to attain the desired goal, removal of weapons from the streets.

*Ortiz*, at 324-25.

In this case, it is reasonable to assume that considerations similar to those expressed in *Ortiz* motivated the City to enact SMC 12A.14.080(B). The presumption is that, unless an exemption is applicable, one who carries a "dangerous knife" within the city of Seattle does so either for criminal purposes or for other reasons that are hazardous to the safety and welfare of the public.

Riggins contends that the public benefit from the ordinance is vague. We disagree. The purpose of SMC 12A-.14.080 is to prevent members of the public from having quick and easy access to dangerous knives in public places. As noted in *Ortiz*, knives are "implicated in many street

crimes, and continue to be a prime cause of serious injury and death." *Ortiz*, at 324. There can be little doubt that the regulation of dangerous knives bears a reasonable relationship to public safety.

The extent to which the ordinance may restrict the right to keep and bear arms is very minor. SMC 12A.14.080(B) permits possession and use of dangerous knives, but restricts the manner in which people can carry them in public. Folding knives with a blade length of less than 3½ inches are not covered by the ordinance. *See* SMC 12A-.14.010(D). Balancing the benefit to public safety against the degree to which the ordinance might frustrate the purpose of the constitutional provision, we find that the ordinance meets the test of judicial reasonableness.

OVERBREADTH

Riggins next contends SMC 12A.14.080 is invalid on its face because its prohibitions include substantial legitimate activity. He contends that individuals who are backpacking, hiking, camping, or barbecuing in a city park are subject to prosecution under the ordinance if they possess and use "dangerous knives".

■ In the free speech context, a law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. *Seattle v. Slack*, 113 Wn.2d 850, 854, 784 P.2d 494 (1989). In determining overbreadth, " 'a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.' " *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989) (quoting *Houston v. Hill*, 482 U.S. 451, 96 L. Ed. 2d 398, 107 S. Ct. 2502, 2508 (1987)). Particular scrutiny is required of criminal statutes, which may be held facially invalid if they " 'make unlawful a substantial amount of constitutionally protected conduct . . . even if they also have legitimate application.' " *Huff*, at 925 (quoting *Hill*, 107 S. Ct. at 2508).

Riggins cites several cases from other jurisdictions which have applied the overbreadth doctrine to laws impacting the

right to keep and bear arms. *See State v. Witherbee*, 79 Or. App. 36, 717 P.2d 661 (1986); *Lakewood v. Pillow*, 180 Colo. 20, 501 P.2d 744 (1972); *Las Vegas v. Moberg*, 82 N.M. 626, 485 P.2d 737 (1971). We have reviewed the cited cases and find them so dissimilar that they are not persuasive on the issue of overbreadth as applied to the circumstances of the case before us.

The ordinance here does not ban the possession of "dangerous knives", but simply regulates how they may be carried in city limits. The examples of purely innocent conduct Riggins has cited as falling within the ordinance — such as backpacking, hiking or camping — are hardly common activities within the city limits. Riggins has failed to cite a substantial number of unconstitutional applications. The citation of one or two possible applications of the law to otherwise valid conduct is inadequate to overcome the heavy presumption of constitutionality. *Ortiz*, at 323.

Riggins' conduct falls squarely within the proscriptions of SMC 12A.14.080. The exemptions from the scope of the ordinance are adequate to narrow its application to those situations where it is reasonable to presume that when a knife 3½ inches or greater in length is carried in a public place, the knife is being carried for a criminal purpose or for some other reason hazardous to the public safety or health. Riggins has failed to show that his conduct falls within one of the ordinance's exemptions. His contention of overbreadth is rejected.

SUFFICIENCY OF THE CHARGING DOCUMENTS

Riggins argues that the citation charging him was constitutionally defective because it failed to state the essential elements of the offense charged.

Riggins contends that "knowingly carrying a dangerous knife on [one's] person" is an essential element of SMC 12A.14.080(B), and that none of these elements were listed in the citation with which he was charged. Brief of Appellent, at 39. He argues that his conviction should be reversed because the citation failed to fully and fairly apprise him of the accusation against him.

■ Two recent decisions of this court are dispositive of Riggins' claims. *See Auburn v. Brooke*, 60 Wn. App. 87, 803 P.2d 1325, *review granted*, 117 Wn.2d 1008 (1991);† *Seattle v. Hall*, 60 Wn. App. 645, 806 P.2d 1246 (1991). In *Brooke*, a defendant convicted of disorderly conduct alleged his conviction was constitutionally defective because his citation failed to list all the essential elements of the offense. *Brooke*, at 89. The citation merely charged Brooke with " '9.40.010(A)(2) Disorderly Conduct.' " *Brooke*, at 89. At the time of his offense, Auburn Municipal Code 9.40.010(A)(2) read:

> A. A person is guilty of disorderly conduct if, with a purpose to cause public danger, alarm, disorder, nuisance, or if with the knowledge that he is likely to create such public danger, alarm, disorder or nuisance, he willfully:
>
> . . . .
> 2. Engages in fighting or in violent, threatening or tumultuous behavior; . . .

*Brooke*, at 89. The court held that a citation which complies with CrRLJ 2.1(b)(3) is sufficient to vest jurisdiction with the trial court. *Brooke*, at 93. In pertinent part, that rule provides that the citation shall include "the date, time, place, numerical code section, description of the offense charged, the date on which the citation was issued, and the name of the citing officer". CrRLJ 2.1(b)(3)(iii). Because the citation issued to Brooke contained the correct code section and an adequate description of the offense charged, the court held it sufficient to vest the trial court with jurisdiction. *Brooke*, at 93. The court believed that it was "simply unrealistic to expect arresting police officers to know each of the statutory elements of every crime." *Brooke*, at 93.

Riggins' claim in this case, however, is that the citation failed to fully and fairly apprise him of the accusation against him. As emphasized in *Brooke*, a conclusion that a citation passes jurisdictional muster does not resolve the question of whether a defendant has received adequate notice of the charge against him. *Brooke*, at 93. The notice

---

†Reporter's Note: The Supreme Court reversed the decision of the Court of Appeals at 119 Wn.2d 623 (1992).

requirements for citations, however, are somewhat less stringent than those for complaints:

> [A]lthough the constitutional requirement of notice is the same, different procedures and requirements for charging by complaint and by citation do not violate the right to due process. [*State v. Leach*, 113 Wn.2d 679, 698, 782 P.2d 552 (1989)]. Citations are issued by police officers at the scene. *Leach*, 113 Wn.2d at 698. Therefore, the defendants are aware of the particular incident for which they are charged, and presumably know the facts underlying the charge. *Leach*, 113 Wn.2d at 698. In contrast, complaints are issued by a prosecutor who is not present at the scene. *Leach*, 113 Wn.2d at 698. Thus, the prosecutor must define the crime more specifically to assist a defendant in determining the incident the complaint addresses. *Leach*, 113 Wn.2d at 698.

*Brooke*, at 93-94.

The citation in this case charged Riggins with "12A.14-.080(B) Unlawful use of weapons." This was an adequate description of the offense. *See Seattle v. Hall*, 60 Wn. App. at 650 (citation states an offense if it specifies the code section that the defendant allegedly violated and a descriptive *title* of the offense charged). As was implicitly recognized in *Hall*, it is proper to describe a violation of SMC 12A.14.080(B) as "Unlawful use of weapons."[2] *Hall*, at 650 n.2. Furthermore, because Riggins was charged by citation, he is presumed to be aware of the facts underlying the charge. *See Brooke*, at 94. This presumption is reinforced by the fact that the officers took the knife away from Riggins at the time of his arrest, and further told him that it was illegal to have the knife.

The judgment is affirmed.

GROSSE, C.J., and FORREST, J., concur.

Reconsideration denied January 31, 1992.

Remanded by Supreme Court to the Court of Appeals at 120 Wn.2d 1012 (1992).

---

[2]Like the present case, *Hall* involved a challenge to the sufficiency of a citation under SMC 12A.14.080(B). *Hall*, at 650. The citation in that case listed the code section and described the offense as " 'carrying a concealed weapon' ". *Hall*, at 650. The court stated that "[a]lthough the actual title of the code section is 'Unlawful use of weapons', the officer's use of the phrase 'Carrying Concealed Weapons' adequately describes the offense charged." *Hall*, 60 Wn. App. at 650 n.2.