IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33858-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| D.E.D., | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — D.E.D.[1] appeals from a juvenile adjudication finding him guilty of

obstructing a public servant. For reasons different than he argues, we conclude that his

passive resistance to an investigatory stop was not a crime under these facts. The

conviction is reversed.

## FACTS

The essential facts of the case revolve around an encounter between 17-year-old

D.E.D. and Wapato Police Department Officer Michael Deccio. The officer responded to

a call from a woman complaining about a group of youths who did not belong in her

neighborhood along the 500 block of South Tieton Street. Several minutes later the

officer arrived in the area in his patrol car.

---

[1] Our concurring colleague has created the pseudonym of Dennis Davis for young D.E.D. We will adopt that pseudonym and occasionally make reference to "Dennis," "Dennis Davis," or "Mr. Davis" rather than refer to the appellant solely by his initials.

Instead of seeing a group of youths, the officer saw Mr. Davis walking down the middle of the street by himself. The officer did not immediately recognize Mr. Davis, but eventually recalled that he lived a few blocks away, although he could not remember the young man's name. The youth was walking in the direction of his house.

Admittedly lacking evidence of reasonable suspicion to justify detaining the youth, Officer Deccio pulled up alongside in his patrol car and asked, "what's going on?" Dennis responded with profanity and accused the officer of bothering him. The youth's body was tense with fists clenched and arms flexed tight. The officer decided to park his car and further attempt to speak to the youth.

As the officer was getting out of his car, the police dispatch advised that another caller had reported a group of kids, one of whom displayed a gun, outside his front yard. Officer Deccio then detained Davis while indicating that the young man was not under arrest. The officer attempted to handcuff Davis, but the younger man pulled his arm away and demanded that the officer not touch him. The officer directed Davis to put his arms behind his back, but the young man refused to comply. He attempted to stiffen his body and pull away from the officer in order to avoid being handcuffed. The officer continued to attempt to handcuff the young man in order to search for a gun. After two minutes, the officer prevailed in overpowering Davis and handcuffing him. A search failed to uncover any weapons.

2

No. 33858-4-III
*State v. D.E.D.*

A charge of obstructing a public servant was filed in the juvenile division of the Yakima County Superior Court. Although no motion to suppress was ever filed, defense counsel attempted to argue during trial that the seizure was unlawful and, therefore, his client should be acquitted. The trial court declined to entertain the argument, pointing out that the defense never sought to challenge the legality of the stop by pretrial motion. Instead, counsel had objected to the officer relating the hearsay basis for his decision to detain Dennis. The trial court described defense counsel's approach as an effort to gain a tactical advantage over the prosecution. Report of Proceedings (RP) at 51-53.

The court concluded that D.E.D. had hindered the officer in the course of his official duties by struggling and resisting the detention, along with attempting to kick the officer in the groin. RP at 54. This resistance had cost the officer several minutes of time. Accordingly, the court found that the defendant committed the crime of obstructing a public servant. RP at 54.

The court imposed a standard disposition. Clerk's Papers at 9. D.E.D. then timely appealed to this court, arguing that his counsel rendered ineffective assistance by failing to file a motion to suppress. A panel considered the case without oral argument and then directed the parties to file supplemental briefing concerning the sufficiency of the evidence.[2]

_____

[2] *See* RAP 10.1(h) (appellate court may, on its own, direct the filing of briefs on the merits).

3

No. 33858-4-III
*State v. D.E.D.*

ANALYSIS

The sole issue is whether the evidence was sufficient to support the conviction for obstructing a public servant.[3] We conclude that the evidence was insufficient and reverse.

One obstructs an officer when he "willfully hinders, delays, or obstructs" the officer "in the discharge of his or her official powers or duties." RCW 9A.76.020(1). To avoid constitutional infirmities, the obstruction statute requires conduct beyond merely making false statements to the police. *State v. Williams*, 171 Wn.2d 474, 485-86, 251 P.3d 877 (2011); *accord State v. E.J.J.*, 183 Wn.2d 497, 502, 354 P.3d 815 (2015). Evidence is insufficient if the trier of fact could not find each element of the offense proven beyond a reasonable doubt. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980).

While a charge of obstructing a public servant is the offense at issue in this case, it plays out in the context of an investigative detention authorized by *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (Fourth Amendment), and *State v. Kennedy*, 107 Wn.2d 1, 4-6, 726 P.2d 445 (1986) (Wash. Const., art. I, § 7). When an officer can articulate the basis for believing possible criminal activity is afoot, a brief detention to investigate is permissible. *Terry*, 392 U.S. at 21. The test is whether the

_____

[3] Sufficiency of the evidence is an issue that may be presented for the first time on appeal. RAP 2.5(a)(2); *State v. Clark*, 195 Wn. App. 868, 873-77, 381 P.3d 198 (2016).

4

facts known to the officer show "a substantial possibility that criminal conduct has occurred or is about to occur." *Kennedy*, 107 Wn.2d at 6. The *Kennedy* court also noted, "When the activity is consistent with criminal activity, although also consistent with noncriminal activity, it may justify a brief detention." *Id.*

D.E.D initially argued on appeal that his counsel rendered ineffective assistance by failing to file a motion to suppress. For several reasons, we disagree with that position because the ineffective assistance standard was not satisfied here. Under the Sixth Amendment, an attorney provides ineffective assistance when he or she fails to live up to the standards of the profession and prejudice to the client results from that failure. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). When the issue is raised for the first time on appeal, as here, the issue is not "manifest" if the record is insufficient to properly adjudge the matter. *McFarland*, 127 Wn.2d at 334. Furthermore, in the context of the failure to bring a motion to suppress, counsel can only have been ineffective if it can be shown that the motion likely would have been granted. *Id.*

The preceding authorities show three of the reasons why the ineffective assistance argument fails. First, there is an insufficient record to fairly consider the issue. Because there was no motion to suppress, the State had no obligation or interest in developing the

factual basis for the detention. Second, defense counsel had a tactical reason not to bring the motion—he wanted to keep the contents of the dispatch reports to Officer Deccio out of the record in order to support his theory that the detention was improper.[4] He successfully kept much of that information from entering the record. Third, the defense success in keeping the evidence out of the record leaves this court unable to determine whether or not a motion to suppress would have been granted. For all three reasons, the *Strickland* argument was unavailing; D.E.D. has not established that his counsel performed ineffectively.

Moreover, even if one had been timely filed, a suppression motion necessarily would have failed because there was no evidence to suppress. The exclusionary rule only extends to the fruits of the bad search or seizure resulting from the illegal actions of the police. *State v. Aydelotte*, 35 Wn. App. 125, 131-32, 665 P.2d 443 (1983) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). It is not a "but for" rule of causation leading to suppression of all evidence obtained after the improper conduct. *Wong Sun*, 371 U.S. at 487-88 ("We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal

---

[4] The officer was free to rely on that information in making his decision to detain D.E.D. *State v. Howerton*, 187 Wn. App. 357, 375, 348 P.3d 781 (2015).

actions of the police.")[5] Rather, suppression extends only to evidence that "has been come at by exploitation of that illegality." *Id.* at 488. *Accord State v. Mierz*, 127 Wn.2d 460, 474-75, 901 P.2d 286 (1995); *State v. Bonds*, 98 Wn.2d 1, 10-14, 653 P.2d 1024 (1982) (declining to suppress confession following illegal arrest and return from Oregon where officers had probable cause to make arrest); *Aydelotte*, 35 Wn. App. at 132.[6]

It is for that reason that it long has been the rule that a defendant's criminal behavior in response to a police illegality is not subject to suppression. In *State v. Hoffman*, 116 Wn.2d 51, 804 P.2d 577 (1991), a defendant argued that an officer was not performing his official duties because the officer had (allegedly) illegally attempted to arrest the defendant without a search warrant. *Id.* at 99-100. Our court disagreed, ruling that as long as the officer was not engaged in a "frolic of his or her own," the officer was still performing his official duties even if the arrest was improper or had lacked probable cause. *Id.* at 100. *Mierz* involved a similar claim by a defendant who argued that he was not guilty of assault because the officers he attacked were trespassing on his property in

---

[5] *Accord United States v. Ceccolini*, 435 U.S. 268, 276, 98 S. Ct. 1054, 55 L. Ed. 2d 268 (1978) ("Even in situations where the exclusionary rule is plainly applicable, we have declined to adopt a 'per se or "but for" rule' that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest." (citing *Brown v. Illinois*, 422 U.S. 590, 603, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975)).

[6] Because there was no evidence to suppress, the proper procedure in a case of this nature more likely would have been a pretrial motion to dismiss pursuant to *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

violation of the constitution. Our court again disagreed, holding that officers were still performing official duties even if they were acting outside the strictures of the constitution. *Id.* at 473-76.[7] In *State v. Valentine*, 132 Wn.2d 1, 935 P.2d 1294 (1997), the court, rejecting an old common law rule, determined that a person cannot respond to police illegality by performing a criminal act in return. *Id.* at 21. In *State v. Holeman*, 103 Wn.2d 426, 429-31, 693 P.2d 89 (1985), a defendant was guilty of obstructing a public servant for attempting to assist another in resisting what was believed to be an unlawful arrest of his father. The illegality of that arrest did not justify the defendant hindering the officers.

D.E.D. argues, and our concurring brother agrees, that an illegal seizure does not constitute "official powers or duties." For at least two reasons, we disagree. First, for the reasons previously noted, there is no basis for determining in this case whether the seizure was illegal or not. It may well have been. However, the defense never put the illegality of the stop before the trial court and the State had no opportunity to present its evidence on the topic. Second, the argument is based on *dicta* from a decision of this court that is at odds with the noted Washington Supreme Court authorities cited in the previous paragraph.

---

[7] *Mierz* also overruled *State v. Apodaca*, 67 Wn. App. 736, 839 P.2d 352 (1992), where this court had suppressed evidence of a defendant's efforts to grab a gun and shoot officers who had improperly entered the defendant's apartment. *See Mierz*, 127 Wn.2d at 474.

8

The case in question is an opinion by a divided panel in *State v. Barnes*, 96 Wn. App. 217, 978 P.2d 1131 (1999). There an officer had asked the defendant to wait while he checked to see if an arrest warrant was still outstanding; the defendant told the officer it had been cleared. *Id.* at 219. Mr. Barnes fidgeted while waiting and would not keep his hands out of his pockets despite the officer's directives. That activity led the officer to arrest Barnes for obstructing a public servant. A search subsequently found cocaine. *Id.* at 220. On appeal, the prosecutor did not try to defend the stop other than to argue that initially it was consensual. *Id.* at 221-22. This court, thus, concluded the nature of the encounter was the "only question before us." *Id.* at 222. The majority determined that the encounter was not consensual and suppressed the drugs. *Id.* at 222-24. The court then went on to state that the arrest for obstructing a public servant also was invalid because an illegal arrest is not an official duty of a police officer. *Id.* at 225.

It is this final—and unnecessary—observation on which Mr. Davis largely rests his argument. We do not. In addition to being unnecessary *dicta* since the determination that Mr. Barnes had been illegally detained prior to the arrest rendered the subsequent seizure of the drugs inadmissible, the comment is completely at odds with the repeated observations by our court that criminal behavior is not excused merely because the officer erred in arresting or seizing a suspect. As noted in *Mierz*, such a rule could result in an officer having to "pay the ultimate price" for a mistaken arrest with evidence of the officer's murder being suppressed. *Mierz*, 127 Wn.2d at 475. Suppression standards do

9

not extend so far. *Id.* This approach also makes *Barnes* run afoul of *Hoffman.* If an illegal arrest does not justify suppression of a defendant's subsequent criminal action, *Hoffman*, 116 Wn.2d at 99-100, an illegal detention certainly cannot.

But in addition to being *dicta*, the language from *Barnes* also was made without analysis; the sufficiency of the evidence question was never presented to that court because Mr. Barnes never was prosecuted for obstructing the officer. The only support cited by *Barnes* was the plurality opinion in *State v. Little*, 116 Wn.2d 488, 806 P.2d 749 (1991), where the four justice lead opinion would have found that fleeing from a valid *Terry* stop constituted obstructing a public servant. *Id.* at 496-98. The three justice concurrence would have resolved the case on the basis that the defendants were trespassing. *Id.* at 498-99 (Guy, J., concurring). Only the two dissenting justices challenged the validity of the detention. *Id.* at 499-504 (Utter, J., dissenting).

*Little* is thus a very curious case to cite for the proposition that a valid detention is a requirement for an obstructing a public servant prosecution. After all, *Little* upheld the detention of the defendants and, although not a sufficiency of the evidence action, suggests that fleeing a valid stop *is* a crime. It does not stand for the converse proposition that fleeing an invalid stop is not a crime. The *Barnes dicta* is simply without support. We think a better way to approach the obstructing statute is to determine if the defendant had any obligation to cooperate with the officer.

10

As a general proposition, there is no obligation to cooperate with the police. *E.g.*, *State v. Budik*, 173 Wn.2d 727, 272 P.3d 816 (2012) (defendant falsely telling police that he was unaware of identity of man who shot him not a crime). Refusing to provide information to the police does not constitute obstructing a public servant. *E.g.*, *State v. Steen*, 164 Wn. App. 789, 265 P.3d 901 (2011) (defendant not guilty of obstructing for refusing to provide his name and identification to officers, but was guilty for refusing to obey their commands to leave a trailer); *State v. Contreras*, 92 Wn. App. 307, 316, 966 P.2d 915 (1998) (refusal to answer questions not a basis for obstructing charge, but failing to obey commands to exit car and keep hands in sight were bases for obstructing); *State v. Hoffman*, 35 Wn. App. 13, 16-17, 664 P.2d 1259 (1983) (refusal to provide name and other information not obstructing). Similarly, there must be conduct in addition to providing false information to the police for a defendant to commit obstructing a public servant. *Williams*, 171 Wn.2d at 486.

From these authorities, we conclude there is no general obligation to cooperate with a police investigation.[8] Whenever such a duty exists, it frequently is imposed by statute. For instance, all drivers and pedestrians have an obligation to provide

---

[8] *Accord State v. White*, 97 Wn.2d 92, 106, 640 P.2d 1061 (1982) ("Although a person may be briefly detained on the basis of reasonable suspicion 'while pertinent questions are directed to him . . . the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest.'" (*quoting* concurring opinion of Justice White from *Terry*, 392 U.S. at 34)).

11

information necessary to enforce the traffic codes. RCW 46.61.020, .021; RCW 46.63.020. Anyone being lawfully arrested has an obligation to not resist the arrest. RCW 9A.76.040(1). The duty imposed by the obstructing statute is not to hinder or delay the police investigation; there is no duty to cooperate. *E.g.*, *Holeman* (obstructing by interfering with arrest of another); *Steen* (refusal to obey commands designed to control scene); *Contreras* (failing to obey commands to leave car and keep hands in sight).[9]

But where the suspect is personally the target of the investigative detention, we think the lack of an obligation to assist the police precludes use of the obstructing statute to enforce cooperation, a position bolstered by the resisting arrest statute. The legislature has only imposed a duty to cooperate with a lawful *arrest*.[10] Since the resisting arrest statute does not even purport to address detentions or other seizures short of an arrest, the statute cannot be said to have imposed any duty of cooperation with the detention. Other statutes impose different duties that may arise in this situation such as the duty to not assault or threaten the officer. RCW 9A.36.031 (third degree assault); RCW 9A.36.041 (fourth degree assault); RCW 9A.46.020 (harassment). However, no charges along any of those lines were filed in this case, nor does the behavior of D.E.D rise to such levels.

---

[9] Here, we believe *Barnes* is in error where it cites the obstructing statute for the proposition that a defendant must comply with an officer. 96 Wn. App. at 224. That statute prohibits actions that hinder police; it does not compel compliance.

[10] By implication, there is no duty to refrain from resisting an unlawful arrest.

12

Passive resistance consistent with the lack of a duty to cooperate, however, is not criminal behavior. Accordingly, we conclude that D.E.D.'s resistance to being handcuffed and his ensuing struggle to prevent handcuffing that did not amount to obstructing a public servant. He did not hinder or obstruct the officer since he had no obligation to cooperate with the officer.

We caution against extending our narrow holding, which is simply that resisting handcuffing when a suspect is not under arrest does not constitute obstructing a public servant. More active resistance, possibly such as the flight at issue in *Little*, could perhaps rise to the level of obstructing a public servant.[11] This case, however, does not involve such facts and we leave resolution of that problem to another day.

Crime detection and prevention are permissive bases for investigative stops under our federal and state constitutions. *Terry*, 392 U.S. at 22; *Kennedy*, 107 Wn.2d at 5-6. Accordingly, we believe that those investigative stops are "official duties" within the meaning of the obstructing statute. Even if an officer's error might make the stop improper under *Terry* and *Kennedy*, it does not thereby convert the stop into a "frolic of his or her own" that might otherwise indicate that the officer was acting outside of his

---

[11] *But see State v. Mendez*, 137 Wn.2d 208, 224, 970 P.2d 722 (1999) (noting instances when flight is not a crime).

13

official duties. *Hoffman*, 116 Wn.2d at 100.[12] We adjudge a suspect's response to an investigative stop in accordance with the reasonableness of that behavior and its effect on the investigation. Failing to cooperate with an investigative stop is not necessarily an obstruction of that investigation. This case is an example. Dennis Davis passively resisted being handcuffed; he did not thereby hinder or obstruct the investigation into whether he was the armed youth the officer was trying to find.

The conviction is reversed.

_____
Korsmo, J.

I CONCUR:

_____
Siddoway, J.

---

[12] We do not equate "official duties" with the propriety or impropriety of an officer's actions in the performance of those duties. In other words, an officer's performance of his duties in violation of the constitution does not mean the investigation was no longer within the scope of his "official duties." It may mean that he performed the duties improperly, requiring suppression of evidence obtained in violation of constitutional commands, but it does not change the nature of his original duties.

No. 33858-4-III

FEARING, C.J. (concurring) — I concur in the result accompanying the majority's opinion. I disagree with the analysis provided by the majority. This court should conclude that Officer Michael Deccio lacked grounds for a *Terry* stop, rather than conclude that Dennis Davis could resist the *Terry* stop, and this court should ignore Davis' contention that he suffered ineffectual representation of trial counsel. Dennis Davis is a pseudonym.

Our ruling that insufficient evidence supported Dennis Davis' adjudication of obstructing a public servant results in dismissal of the charges. A ruling that Davis suffered ineffective assistance of counsel would not dismiss the charges, but would result in a remand for a new trial. Since we dismiss the charges, any argument that Davis experienced ineffective assistance of counsel becomes moot. We need not and should not address Davis' assistance of counsel contention.

I disagree with the majority's implied conclusion that Officer Michael Deccio had reasonable suspicion that Dennis Davis engaged in criminal activity such that Officer Deccio could perform a *Terry* stop. I also disagree with the majority's conclusion that, assuming an officer has lawful grounds for a stop, the detained individual lacks any duty

to cooperate. At the least, the detainee should cooperate by standing still and refraining from struggling with the officer.

The majority omits some focal facts. The first anonymous 911 caller complained to the Wapato Police Department of the presence of minors who did not belong in her neighborhood along the 500 block of South Tieton Street. She believed they "were up to no good or causing trouble." Report of Proceedings (RP) at 4. The caller did not identify the number of juveniles or their ages, genders, race, or clothing. Dennis Davis is African-American.

Wapato Police Officer Michael Deccio responded to the 911 call. Daylight still prevailed. Deccio knew that the caller's report contained no information of criminal activity. When Officer Deccio approached Dennis Davis on the street, Deccio knew he lacked reasonable suspicion to detain Davis and understood that no threat endangered him.

As Officer Michael Deccio opened his car door to speak with Dennis Davis, dispatch advised Deccio of a second 911 caller, who complained of a group of kids, one who held a gun, outside his front yard. The caller did not describe, to dispatch, the gun or identify the teenager holding the gun. The caller had not seen a gun, but repeated what someone told him.

This appeal raises at least two questions. Did Officer Michael Deccio unlawfully detain Davis? Is Dennis Davis free from guilt of obstructing a law enforcement officer if

2

he obstructed Officer Michael Deccio after the officer unlawfully detained him?

The trial court convicted Dennis Davis of obstructing a law enforcement officer in violation of RCW 9A.76.020. The statute reads, in pertinent part:

> (1) A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties.

Dennis Davis argues that if Officer Michael Deccio lacked cause to detain him, this court must dismiss the charges against him. He cites cases that suppress evidence seized by an officer as a result of an illegal seizure. *State v. Fuentes*, 183 Wn.2d 149, 352 P.3d 152 (2015); *State v. Ladson*, 138 Wn.2d 343, 979 P.2d 833 (1999); *State v. Armenta*, 134 Wn.2d 1, 948 P.2d 1280 (1997). In each case, the high court dismissed charges for possession of controlled substances or firearms because suppression of the controlled substance or firearm left no evidence on which to convict the accused.

Officer Michael Deccio did not seize physical evidence after detaining Dennis Davis. Davis does not seek to suppress physical evidence. He seeks to suppress testimony as to events that occurred during the seizure. He cites no case dismissing charges against one accused of obstructing a law enforcement officer by resisting a seizure under the circumstances of an illegal detainment. The State did not charge Dennis Davis with resisting arrest or assault. A defendant may not excuse his assaultive behavior toward a law enforcement officer on the grounds of an illegal search or seizure. *State v. Mierz*, 127 Wn.2d 460, 474, 901 P.2d 286 (1995).

3

The State of Washington charged Dennis Davis only with obstructing a law enforcement officer. The majority and I recognize the logic behind rejecting charges of obstructing an officer based on an accused's reaction to unlawful behavior of a law enforcement officer. In a distinguishable case, this court ruled that one does not obstruct a law enforcement officer during an unlawful detention, because an unlawful detention is by definition not part of lawful police duties. *State v. Barnes*, 96 Wn. App. 217, 225, 978 P.2d 1131 (1999). The State does not argue against dismissal of the charges against Davis on the assumption Officer Michael Deccio unlawfully detained Davis. Instead the State claims that Deccio lawfully restrained Davis.

I now ask if Officer Michael Deccio unlawfully detained Dennis Davis. As a general rule, warrantless searches and seizures are per se unreasonable, in violation of the United States Constitution's Fourth Amendment and article I, section 7 of the Washington State Constitution. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). Washington recognizes five jealously and carefully drawn exceptions to the warrant requirement, which include exigent circumstances, searches incident to a valid arrest, inventory searches, plain view searches, and *Terry* investigative stops. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). This appeal concerns a *Terry* stop, named for *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The State bears the burden of demonstrating that a warrantless seizure falls into a narrow exception to the rule. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010).

4

This imposition of the burden of proof is a strict rule. *State v. White*, 135 Wn.2d 761, 769, 958 P.2d 982 (1998).

A *Terry* stop constitutes a law enforcement officer's intermediate response to a situation for which he lacks probable cause to arrest but which calls for further investigation. *State v. Armenta*, 134 Wn.2d at 16 (1997); *State v. Moreno*, 173 Wn. App. 479, 491-92, 294 P.3d 812 (2013). To justify a *Terry* stop, the police officer must identify specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant an intrusion. *Terry v. Ohio*, 392 U.S. at 21; *State v. Armenta*, 134 Wn.2d at 10. An officer is justified in taking protective measures, such as a warrantless search, when the officer can point to specific articulable facts that create an objectively reasonable belief that a suspect is armed and presently dangerous. *State v. Bee Xiong*, 164 Wn.2d 506, 514, 191 P.3d 1278 (2008). The officer's actions must be justified at their inception. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

The level of articulable suspicion necessary to support an investigative detention is a substantial possibility that criminal conduct has occurred or is about to occur. *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). Use of the word "possibility" suggests that the information known to the officer need not support a probability of criminal activity. The requisite level of suspicion is less than proof of wrongdoing by a preponderance of the evidence. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581,

5

104 L. Ed. 2d 1 (1989).

Although a *Terry* stop may be based on "suspicion," use of the modifier "articulable" suggests the suspicion must be explainable. Another formulation of the *Terry* stop rule requires facts to form the suspicion. An officer may not detain a citizen when the officer claims a reasonable suspicion of criminal activity but cannot articulate objective facts warranting the reasonable suspicion. *State v. Richardson*, 64 Wn. App. 693, 697, 825 P.2d 754 (1992). A protective frisk is justified only when the officer can point to "specific and articulable facts" that create an objective, reasonable belief that the suspect is armed and dangerous. *State v. Lennon*, 94 Wn. App. 573, 580, 976 P.2d 121 (1999). A hunch alone does not warrant police intrusion into people's everyday lives. *State v. Doughty*, 170 Wn.2d at 63 (2010). Innocuous facts alone do not justify a stop. *State v. Roland Tijerina*, 61 Wn. App. 626, 629, 811 P.2d 241 (1991). When reviewing the merits of an investigatory stop, a court must evaluate the totality of circumstances presented to the investigating officer. *State v. Doughty*, 170 Wn.2d at 62. A person's presence in a high-crime area does not, by itself, give rise to a reasonable suspicion to detain that person. *Terry v. Ohio*, 392 U.S. at 21-22 (1968); *State v. Doughty*, 170 Wn.2d at 62; *State v. Ellwood*, 52 Wn. App. 70, 74, 757 P.2d 547 (1988).

An informant's tip can provide police reasonable suspicion to make an investigatory stop, but the informant's tip must be reliable. *State v. Hopkins*, 128 Wn. App. 855, 862, 117 P.3d 377 (2005). The informant's tip is reliable when (1) the

6

information is reliable and (2) the informant's tip contains enough objective facts to justify the pursuit and detention of the suspect or the noninnocuous details of the tip have been corroborated by the police thus suggesting that the information was obtained in a reliable fashion. *State v. Hopkins*, 128 Wn. App. at 862-63. The law deems a named or unknown telephone informant unreliable because such an informant could easily fabricate an alias and thereby remain, like an anonymous informant, unidentifiable. *State v. Hopkins*, 128 Wn. App. at 863-64. In *State v. Hopkins*, the court of appeals reversed convictions for unlawful possession of a firearm, unlawful possession of a controlled substance, and making a false statement to a public servant because the law enforcement officer had no cause to make an investigatory stop based on an anonymous phone tip that someone possessed a gun. *Hopkins* controls this appeal.

My analysis of this appeal begins with the first 911 call. The first emergency dispatch caller reported the depositing of juveniles in her neighborhood. The unidentified caller did not recognize the juveniles, but the caller declared that the youngsters "were up to no good or causing trouble." RP at 4. The caller did not specify any conduct of the teenagers, let alone any unlawful conduct. One may be "up to no good" or "causing trouble" without engaging in criminal behavior. The caller provided no information that the teenagers roamed in a prohibited area.

When responding to the call, Officer Michael Deccio knew not the number of juveniles or their ages, genders, race, or clothing. When Deccio arrived at the scene, he

7

encountered Dennis Davis walking alone, not with a gaggle of juveniles. Deccio later remembered that Davis lived in the neighborhood and conceded that Davis walked in the direction of his home. Nonetheless, Deccio confronted Davis, despite no observation connecting Davis to the first 911 call except his age. Deccio admitted that he lacked reasonable suspicion to detain Davis after the first 911 call.

The State contends Dennis Davis walked down the middle of the street in the exact location reported by 911 callers. I question the validity of the State's contention and whether the middle of the particular street coincided with the reported location. The first caller merely reported juveniles in her neighborhood. The second caller reported kids outside his house.

The State next emphasizes the hostility and threatening posture exhibited by Dennis Davis when Police Officer Michael Deccio drove next to Davis. The State contends this behavior justified Deccio leaving his car and contacting Davis. I question whether an officer needs any suspicion to leave his car and approach a citizen. The constitution permits such social conduct. Deccio walking toward Davis is not the issue. The challenged conduct entails Officer Deccio stopping and handcuffing Davis.

Dennis Davis exhibited confrontational behavior when Officer Michael Deccio questioned him, but Deccio admitted this type of conduct did not constitute reasonable suspicion to detain. A person's demeanor and his actions during police questioning may provide a sufficient basis for an officer to believe the person is armed and dangerous.

8

*State v. Harper*, 33 Wn. App. 507, 511, 655 P.2d 1199 (1982); *City of Seattle v. Hall*, 60 Wn. App. 645, 652-53, 806 P.2d 1246 (1991). In *Harper*, the police officer's search was justified because the defendant had repeatedly thrust his hands into his coat pockets when the officer questioned him. In *City of Seattle v. Hall*, the appellate court found the police officer's search reasonable when the defendant's behavior was "antsy," "hostile," and "nervous"; the defendant's statements were "defensive"; and the defendant kept his hands in his pockets during the exchange. 60 Wn. App. at 651.

I agree with Police Officer Michael Deccio that Dennis Davis' hostile behavior did not constitute reasonable suspicion to search Davis. Officer Deccio approached Davis without any reasonable suspicion of criminal activity. Deccio questioned Davis, and Davis responded with obscenities while standing in a fighting stance. Davis' behavior, however, did not create an objective reasonable belief that Davis was armed or dangerous. Davis did not put his hands in his pockets. Deccio admitted that he did not believe Davis was armed or dangerous during their interchange. Davis took no steps to hide any contraband.

The State's argument assumes that Officer Michael Deccio could rely on the report of a gun by the second caller. Nevertheless, the record contains no information that either 911 caller identified himself or herself. Even if a caller identified himself or herself, the caller could have used an alias. Therefore, we cannot consider the information provided to emergency dispatch reliable. Also, the second caller lacked

9

percipient knowledge of a gun and merely reported what someone else told him. Although we do not judge the officer's conduct in hindsight, Officer Michael Deccio never confirmed the loitering of a group of teenagers or anyone possessing a gun.

The record contains scattered references to officer safety concerns by Police Officer Michael Deccio. Early in his direct examination, Michael Deccio testified about "officer safety" concerns in the 500 block of South Tieton neighborhood as a result of several past shootings. RP at 9.

The State justifies the stop on the basis of Officer Michael Deccio's safety needs. Nevertheless, the State cites no authority to support its position. This court does not consider conclusory arguments that are unsupported by citation to authority. *Joy v. Department of Labor & Industries*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012). A reasonable safety concern exists and an officer may perform a protective frisk for weapons when the officer articulates specific facts that create an objectively reasonable belief that a suspect is armed and dangerous. *State v. Collins*, 121 Wn.2d 168, 173, 847 P.2d 919 (1993). Officer Deccio never testified that he believed Dennis Davis to be armed and dangerous.

I do not contend that Officer Michael Deccio engaged in racist conduct. Nevertheless, the legal system would benefit from viewing the detaining of Dennis Davis from Davis' perspective. The legal system should not question Davis as to why he could not or would not kindly respond to Officer Deccio's overtures and calmly submit to a

10

search.

The criminal justice system has interrupted and detoured Dennis Davis' life for two years because Davis walked in his neighborhood. Nevertheless, the Fourth Amendment to the United States Constitution guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the government. *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 613-14, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). The Fourth Amendment and article I, section 7 of the Washington State Constitution thereby recognize the sanctity of one's own body. A human being as a human being enjoys the right of privacy in his or her own physicality. Every competent human being holds the right to determine what shall be done with his own body. *Miller-McGee v. Washington Hospital Center*, 920 A.2d 430, 439 (D.C. 2007). Except in limited instances, government authority has no right to intrude on this sacred privilege by seizing one's person or even touching one's body. An authority figure's arbitrary stopping of one's physical movement and indiscriminate feeling of one's body invokes memories of an era of slavery when a member of a race of people lacked any right to be left alone and lacked any entitlement to the possession of his or her corporeal existence. *State v. Mann*, 13 N.C. (2 Dev.) 263 (1829). No one should be surprised or offended by Dennis Davis' response to the unconsented and unlawful handling of his person by a police officer.

I question the validity and practical wisdom of the majority's holding that a

11

No. 33858-4-III
*State v. D.E.D.* (concurring)

detainee need not cooperate during a *Terry* stop. The decisions cited by the majority hold that the detainee need not provide information to the detaining officer and need not obey orders to move one's person or display one's hands. None of the decisions excuse the detainee from physically resisting the stop. The law should not promote a wrestling match between an armed law enforcement officer and a detained citizen when the officer conducts a legitimate *Terry* stop. Since Officer Michael Deccio lacked grounds to conduct a *Terry* stop, the majority need not hold that a detainee may physically repel the stop.

I CONCUR:

Fearing, J.

Fearing, C.J.

12